## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHANTAVIA HART** | * | |
| *Plaintiff,* | * | |
| v. | * | No.:  1:12-cv-2608-ELH |
| **PACIFIC REHAB OF MARYLAND,** | * | |
| **P.A. and FRADKIN & WEBER, P.A.** | | |
| **and A.J. KODECK, CHARTERED** | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO:**

**DEFENDANT A.J. KODECK, CHARTERED'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT;**

**DEFENDANT FRADKIN AND WEBER, P.A.'S
MOTION TO DISMISS AMENDED COMPLAINT; and**

**DEFENDANT PACIFIC REHAB OF MARYLAND, P.A.'S
MOTION TO DISMISS AMENDED COMPLAINT;**

**and**

**<u>REQUEST FOR HEARING</u>**

Plaintiff, Shantavia Hart, by her undersigned counsel, submits this memorandum of law

in opposition to the motions to dismiss her amended complaint filed on behalf of Defendants

A.J. Kodeck, Chartered (ECF 19); Fradkin and Weber, P.A. (ECF 20); and Pacific Rehab of

Maryland, P.A. (ECF 21).

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

APPLICABLE LEGAL STANDARDS ..............................................................................3

ALLEGATIONS OF THE AMENDED CLASS ACTION COMPLAINT ............................6

ARGUMENT ...................................................................................................................12

    A.    PACIFIC IS A DEBT COLLECTOR SUBJECT TO THE
FDCPA ................................................................................................12

    B.    PACIFIC IS VICARIOUSLY LIABLE FOR THE FDCPA
VIOLATIONS OF ITS AGENTS KODECK AND FRADKIN .......................16

    C.    THE PLAINTIFF HAS PROPERLY ALLEGED THAT PACIFIC
AND FRADKIN VIOLATED THE FDCPA BY COLLECTING
DEBTS WITHOUT A LICENSE FOR FORFEITED
CORPORATIONS, FILING TIME BARRED LAWSUITS,
AND SEEKING INTEREST THAT WAS NOT DUE. ...................................19

        1.    Defendants Sued Maryland Consumers to Collect Debts
that Were Not Enforceable Because St. Paul & Biddle
Medical Associates, P.A. is a Dissolved Corporation. ......................21

        2.    Defendants Sued Maryland Consumers on Time-Barred
Debt. .............................................................................................23

        3.    Defendants Sued Maryland Consumers to Collect Interest
Measured from the First Date of Treatment When the
Contractual Documents Creating the Alleged Debt Did
Not Expressly Authorize that Interest Would Be Due on
that Basis.. ......................................................................................28

        4.    Defendants Violated the FDCPA by Collecting Debts
on Behalf of an Unlicensed Collection Agency. ...............................33

    D.    THE PLAINTIFF HAS PROPERLY ALLEGED VIOLATIONS
OF THE MARYLAND CONSUMER DEBT COLLECTION ACT
AND THE MARYLAND CONSUMER PROTECTION ACT .......................35

1.   The Maryland Consumer Debt Collection Act's Applicability
     Does Not Hinge on the Validity of the Underlying Debt ................35

2.   Defendants Possessed the Knowledge Required by the Maryland
     Consumer Debt Collection Act. .......................................................36

3.   Collecting Debts Without a License Also Violates
     the MCDCA ....................................................................................42

4.   The Maryland Consumer Protection Act Applies
     to Otherwise Exempt Organizations Acting as
     Debt Collectors...............................................................................43

CONCLUSION ...............................................................................................45

REQUEST FOR HEARING............................................................................45

## TABLE OF CITATIONS

## CASES

*Acik v. I.C. System, Inc.*, 640 F. Supp. 2d 1019 (N.D. Ill 2009) .......................................30

*Ahmad v. Eastpines Terrace Apartments, Inc.*, 200 Md. App. 362,
28 A.3d 1, (2011) ..............................................................................................23

*Akalwadi v. Risk Managment Alternatives, Inc.*,
336 F. Supp.2d 492 (D. Md. 2004) ...................................................................36

*Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *5
(N.D. Ill, Sept. 26, 2003) ..................................................................................29

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) .............................................3-5

*Atlantic Mill & Lumber Realty Co. v. Keefer*, 179 Md. 496, 20 A.2d 178 (1941) ..............21

*Ballou v. Law Offices of Howard Lee Schiff, P.C.*, 713 F. Supp.2d 79
(D. Conn. 2010) .................................................................................................30

*Baltimore County v. Archway*, 35 Md. App. 158 (1977) .................................................23

*Baltimore County, Maryland v. Aecom Servs., Inc.*, 200 Md. App. 380,
28 A.3d 11 (2011) ..................................................................................31

*Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D.Del.1991)) ...................................28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007)..........................................................................4-6

*Benik v. Hatcher*, 358 Md. 507, 750 A.2d 10 (2000)........................................................38

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980) ...................................................26-27

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ........................................3

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719
(D. Md. 2011) ................................................................................33, 36, 50-51

*Brown v. Lanham Ford Inc.*, 2010 WL 313253 (D.Md. Jan.20, 2010) ..........................20

*Buxton v. Buxton*, 363 Md. 634, 770 A.2d 152 (2001) ......................................................31

*Capps v. U.S. Bank Nat'l Ass'n*, 2009 WL 5149135 (D. Or. Dec. 28, 2009)......................4

*Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp.2d 932 (D. Ariz. 1999) ...........................18

*Carrizosa v. Stassinos*, 2010 WL 144807 (N.D.Cal. January 10, 2010) .........................30

*Carroll v. State*, 65 Md. 551, 3 A. 29, 29 (Md. 1885)........................................................16

*Casewell v. Cross*, 120 Mass. 545 (1876) ...........................................................................17

*Chao v. Ballista*, 630 F. Supp. 2d 170(D. Mass. 2009) ......................................................5

*Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162
(9th Cir. 2006)....................................................................................20

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ..........................................................20

*Cloverfields Improvement Assoc., Inc. v. Seabreeze Properties, Inc.*,
32 Md.App. 421, 362 A.2d 675 (1977) ...............................................................21

*Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL 3734123
(D. Vt. Nov. 5, 2009)..................................................................................................5

*Coulibaly v. J.P. Morgan Chase Bank, N.A.,* 2011 WL 3476994
(D. Md. Aug. 8, 2011) ..............................................................................................21

*Dikun v. Streich*, 369 F. Supp.2d. 781 (E.D.Va.2005) ....................................................20

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007).....................................................3

*Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320 (D. Utah 1997) .............................................18

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 , 1031-32 (9th Cir. 2010) ........................29

*Drisol v. Household Credit Servs., Inc.,* 989 S.W.2d 72 (Tex. App. 1998) ......................17

*Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095 (2004)...............21-22

*Eckert v. LVNV Funding LLC*, 647 F. Supp.2d 1096 (E.D. Mo. 2009) ...........................30

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir.1999)..............................................3

*Federal Sav. and Loan Ins. Corp. v. Quality Inns, Inc.*, 876 F.2d 353
(4th Cir. 1989) ..........................................................................................................31

*Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003 (4th Cir. 1936)....................24

*First Interstate Bank of Fort Collins v. Soucie*, 924 P.2d 1200
(Colo. App. 1996). .....................................................................................................18

*Flohr v. Coleman,* 245 Md. 254,  225 A.2d 868 (1967) .....................................................38

*Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012) ..................................35, 40, 42-43

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ......................................18

*FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393 ...........................................................42

*Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808
(M.D.N.C. 2011) .......................................................................................................20

*Garrett v. Derbes*, 110 F.3d 317 (5th Cir. 1997) ..................................................15

*General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F. Supp. 137
(D.Md. 1938) ..................................................................................24-25

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,
374 F.3d 56 (2d Cir. 2004) ....................................................................15

*Gonzalez v. Napolitano*, 684 F. Supp.2d 555 (D.N.J. 2010) .............................................3

*Grant-Fletcher v. Brachfeld Law Group, PC*, 2012 WL 2523094
(D. Md. June 28, 2012) ....................................................................20, 43

*Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991) ........................................................20

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*,
2001 WL 1035726 (N.D. Ill. Sept. 4, 2001) ......................................................28

*Harkins v. Diversified Collection Services, Inc.*, 2012 WL 5928997
(D. Md. Nov. 26, 2012) ........................................................................39

*Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358
(D. Md. 2010) ..............................................................................18, 34

*Hinterberger v. Catholic Health*, 2008 WL 5114258 (W.D.N.Y.
Nov. 25, 2008) amended, 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009) .........................5

*Hylkema v. Rentcollect Corp.*, 2006 WL 281935  (Sept. 28, 2006) .................................31

*I.W. Berman Properties v. Porter Bros., Inc.*, 276 Md. 1 (1975) .......................................31

*In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp.2d 566 (S.D.N.Y.2005) .....................6

*In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549 (S.D.N.Y. 2011) .............................6

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
130 S.Ct. 1605, 1612 (2010) ..............................................................38

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) ...........................................20

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002) .........................................................20

*Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D.Ala. 1987) ...................................26-27

*Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp.2d 471 (D.Md. 2004)..................36-42

*Kroop & Kurland, P.A. v. Lambros*, 118 Md. App. 651, 703 A.2d 1287 (1998) ...............21

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.2010) ...................................34

*Maldonado v. CACV of Colorado, LLC*, 2007 WL 174085
(D. Ariz. Jan. 18, 2007)......................................................................................................30

*Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495
(D. N.M. 1994)..............................................................................................................29-30

*Martlsolf v. JBC Legal Group, P.C.*, 2008 WL 275719 (M.D. Pa.
Jan. 30, 2008) .....................................................................................................................18

*May v. Warnick*, 227 Md. 77, 175 A.2d 413 (1961) .............................................................44

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939
(9th Cir. 2011) ....................................................................................................................28

*McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) ...........................................................17

*Meija v. Marauder Corp.*, 2007 WL 806486 (N.D. Cal. 2007)........................................29

*Melillo v. Shendell & Assoc., P.A.*, 2012 WL 253205
(S.D. Fla. January 26, 2012) ..............................................................................................29

*Moore v. Baltimore Am. Mortg. Corp.*, 2010 WL 4285013
(D. Md. Oct. 29, 2010):.......................................................................................................21

*Morante v. American General Fin. Ctr.*, 157 F.3d 1006 (5th Cir. 1998)...........................17

*Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994).............................4

*Newman v. CheckRite California, Ltd,* 912 F. Supp. 1480 (M.D. Ala. 1987) ..................18

*Nkengfack v. Homecomings Fin., LLC*, CIV RDB 08-2746
2009 WL 1663533 (D. Md. June 15, 2009) .........................................................................3

*Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp.2d 1089
(C.D. Cal. 2006) ...................................................................................18

*Oppong v. First Union Mortg. Corp.*, 407 F. Supp. 2d 658 (E.D. Pa. 2005)
aff'd in part, vacated in part, 215 F. App.x 114 (3d Cir. 2007) .....................................14-16

*Oppong v. First Union Mortg. Corp.*, 215 F. App.x 114 (3d Cir. 2007) .......................14-15

*Pacheco v. Joseph McMahon Corp.*, 2012 WL 774943
(D. Conn. March 7, 2012) ...................................................................................29

*Patten v. Board of Liquor License Com'rs for Baltimore City*,
107 Md.App. 224, 667 A.2d 940 (1995) ...........................................................21

*Patzka v. Viterbo College*, 917 F. Supp. 654 (W.D. Wis. 1996) .........................................17

*Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (2000)...........................................31

*Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342 (1944) ......................27

*Ramirez v. Palisades Collection LLC*, 2008 WL 2512679
(N.D. Ill. June 23, 2008) ...................................................................................28

*Rawlinson v. Law Office of William M. Rudow, LLC*,
460 Fed.Appx. 254 (4th Cir. 2012) ...................................................................36

*Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir.1998) ...............15

*Russell v. Equifax A.R.S.*, 74 F.3d 30(2d Cir.1996) .........................................................42

*Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp.2d 635 (D. Md. 2010) ...............32-33

*Schroyer v. Frankel*, 197 F.3d 1170 (6th Cir.1999)...........................................................15

*Scott v. Seek Lane Venture, Inc.*, 91 Md.App. 668,605 A.2d 942 (1992)........................21

*Smith v. U.S.*, 561 F.3d 1090 (10th Cir. 2009) ..................................................................5

*Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (tex. App. 1988) .........................17

*Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp.2d 582 (D.Md. 1999).............27, 37-38, 40

*Sprinkle v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006) ...................................30

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) ...........................................................3

*Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012)....................................................44

*Sunga v. Broome*, 2010 WL 3198925 (E.D. Va. Aug. 26, 2010) ..................................29-30

*Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222
(9th Cir. 1988) ........................................................................................................................20

*Taylor v. Checkrite, Ltd.,* 627 F. Supp. 415 (S.D. Ohio 1986) ............................................17

*Thomas v. U.S. Inspect,* 2004 WL 2390072 (D. Md. Oct. 12, 2004)...............................14

*United States v. Kubrick*, 444 U.S. 111 (1979) .....................................................................27

*United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996) .............................20

*Warfield v. Baltimore Gas & Electric Co.*, 307 Md. 142,
512 A.2d 1044 (1986)........................................................................................................24-25

*Weant v. Southern Tr. Co.*, 112 Md. 463 (1910) .................................................................31

*Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749
(D. Md. Apr. 15, 2011) ......................................................................................................16-17

## RULES STATUTES AND CONSTITUTIONAL PROVISIONS

Fed. R. Civ. Proc. 8 ............................................................................................................5-6

Fed. R. Civ. Proc. 11 ..............................................................................................................4

15 U.S.C. §1692(a).................................................................................................................19

15 U.S.C. §1692(b) ................................................................................................................19

15 U.S.C. §1692(e).................................................................................................................19

15 U.S.C. §1692a(3) ................................................................................................................6

15 U.S.C. §1692a(5) .................................................................................6

15 U.S.C. §1692a(6) ........................................................................7, 12, 14

15 U.S.C. §1692e .............................................................................29-30

15 U.S.C. §1692e(2) ..........................................................................28-29

15 U.S.C. §1692e(2)(A) ......................................................................28-29

15 U.S.C. §1692e(5) .........................................................................34, 43

15 U.S.C. §1692f ...............................................................26, 27-30, 34

15 U.S.C. §1692f(1) .......................................................................22, 28-29

15 U.S.C. §1692i ....................................................................................18

15 U.S.C. §1692k ...................................................................................19

1986 U.S.C.C.A.N. 1752 ........................................................................45

Md. Code Ann., Bus. Reg. § 7-101 .....................................................33-34

Md. Code Ann., Bus. Reg. § 7-102(9) ......................................................34

Md. Code Ann., Bus. Reg. § 7-301(a) .......................................................33

Md. Code Ann., Com. Law, § 14-201(b) ......................................................7

Md. Code Ann., Com. Law, § 14-201(c) ......................................................6

Md. Code Ann., Corps & Ass'ns § 1-502 ...................................................13

Md. Code Ann., Corps & Ass'ns § 2-103(2) ...............................................22

Md. Code Ann., Corps & Ass'ns § 3-503(d) ...............................................21

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ............................................23, 25

Md. Rule 1-311(b) .................................................................................39

COMAR 18.04.02.01(4).........................................................................................................13

COMAR 18.04.02.05.C.........................................................................................................14

Restatement (Second) of Contracts § 98 (1981)................................................................24

53 Fed. Reg. 50097 (March 20, 1978)................................................................................31

## INTRODUCTION

This is a consumer protection putative class action lawsuit involving allegedly unlawful debt collection practices. The Plaintiff and the class she seeks to represent are consumer debtors who allege that the Defendants violated the Federal Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA") in the manner by which they attempted to collect for unpaid medical bills.

Pacific Rehab of Maryland, P.A. ("Pacific") agreed to provide medical treatment to automobile accident patients referred to it by personal injury attorneys. These patients understood that the costs of this treatment were to be reimbursed out of any recovery obtained by their attorney as compensation for the injury. The patients believed that if there was no recovery in their favor, they would not be responsible for any expenses, including the medical bills.

As part of this arrangement, Shantavia Hart and the members of the Class she seeks to represent were required to sign two contracts: an "assignment of benefits" relating to treatment provided by "St. Paul & Biddle Medical Associates, P.A.;" and an "agreement and authorization for payment" relating to treatment provided by Pacific Rehab of Maryland, Inc. At the time these documents were signed, St. Paul & Biddle Associates, P.A. was not authorized to conduct business in Maryland, having forfeited its corporate status on October 7, 1999.

Shantavia Hart did not receive compensation for her accident and for many years never received any request for payment of the medical bills, which was consistent with her understanding of the arrangement.

Pacific first hired A.J. Kodeck, Chartered ("Kodeck") to file a large number of lawsuits to collect for treatment covered by contractual documents entered between the patients and St. Paul & Biddle Medical Associates, P.A.

Kodeck was required to be licensed under the Maryland Collection Agency Licensing Act ("MCALA") because it did business as a collection agency in Maryland. Kodeck failed to obtain the required license. Pacific was also required to be licensed under the MCALA because it was collecting debts owed to St. Paul & Biddle Medical Associates, P.A.

On January 5, 2011, Kodeck and Pacific sued Shantavia Hart in the District Court of Maryland seeking repayment of treatment This lawsuit was brought more than five (5) years after the treatment was provided to Shantavia Hart.

As documented in the Amended Class Action Complaint, ECF 14, the complaints brought by Kodeck and Pacific were full of false statements. For example, the name of the plaintiff used in the complaints was "Pacific Rehab & Sports Medicine, Inc." notwithstanding the fact that no entity by that name is registered with the Maryland State Department of Assessments and Taxation. Even worse, Kodeck inflated the amount of damages requested in the complaints he filed. For example, in the suit it brought against Shantavia Hart, Kodeck alleged that the cost of the treatment provided to Shantavia Hart was $6,999.00 when the account statements relating to the treatment disclose that the actual charges for the treatment totaled $3,359.00.

The only thing Kodeck did get right in the complaints it drafted was the manner in which prejudgment interest was calculated. Kodeck chose the last date of treatment as the start date for the accrual of pre-judgment interest on the total balance.

Fradkin and Weber, P.A. ("Fradkin") ultimately took over the litigation from Kodeck and then added insult to injury by recalculating the prejudgment interest sought by choosing the first date of treatment as the start date for the accrual of pre-judgment interest on the entire balance.

As discussed more fully below, this conduct violates the the FDCPA, MCDCA and MCPA and entitles Shantavia Hart and the Class she seeks to represent to actual and statutory damages. Because the Amended Class Action Complaint provides Pacific, Kodeck and Fradkin with notice of factually plausible claims under these statutes, the motions to dismiss filed by Pacific, Kodeck and Fradkin should be dismissed.

## APPLICABLE LEGAL STANDARDS

The Defendants bear the burden of persuading the Court that Shantavia Hart has failed to state a claim. *See, e.g., DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gonzalez v. Napolitano*, 684 F. Supp.2d 555 (D.N.J. 2010). The Defendant's burden is a "heavy" one -- much heavier than on a motion for summary judgment. *See, e.g., Stein v. Smith*, 270 F. Supp. 2d 157, 164 (D. Mass. 2003).

In ruling on a motion to dismiss, "the factual allegations in the Plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Nkengfack v. Homecomings Fin., LLC*, 2009 WL 1663533 (D. Md. June 15, 2009) (*quoting Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)). All reasonable inferences must be drawn in the Plaintiff's favor. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (holding, post-*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), that a district court erred by "ignor[ing] reasonable inferences supported by the facts alleged" and

by drawing "inference in [defendants'] favor"). Additionally, on a motion to dismiss, courts must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994); *see also Capps v. U.S. Bank Nat'l Ass'n*, 2009 WL 5149135, *1 (D. Or. Dec. 28, 2009) (restating this rule after *Iqbal*). Federal Rule of Civil Procedure 11 also specifically contemplates and permits allegations made on information and belief. *See* Fed. R. Civ. Proc. 11(b)(3) & Advisory Committee Notes to the 1993 Amendments.

To the extent that the Supreme Court suggested that "conclusory" allegations need not be taken as true, it closely limited its holding to allegations that simply mirror the elements of a cause of action without any further factual amplification. *See, e.g., Iqbal*, 129 S. Ct. at 1951. Every complaint includes at least some conclusory language because all complaints -- by necessity -- recite the legal elements of the plaintiff's claims. Neither *Twombly* nor *Iqbal* provides any support for an argument that a complaint may be dismissed simply because it includes some conclusory statements. Instead, both cases make clear that in order to justify dismissal, a defendant must satisfy *Twombly* and *Iqbal*'s second step by showing that the plaintiff's claim is so far-fetched as to be implausible. *See, e.g., Iqbal*, 129 S. Ct. at 1951 (holding that the plaintiff's complaint should have been dismissed because it was implausible, not because it contained conclusory allegations); *Twombly*, 550 U.S. at 564-69 (same).

The Supreme Court's adoption of "plausibility" pleading did not impose a radical new regime on lower courts. A plaintiff need not show that her theory of liability is more likely to be true than an alternative explanation offered by the defendant or imagined by the court. To impose such a requirement would create a preponderance standard at the pleading stage,

4

which the Supreme Court explicitly rejected. *Twombly*, 550 U.S. at 556 (plausibility is not a "probability requirement," and the defendant cannot prevail even by showing that the plaintiff is unlikely to succeed, that his claims are "improbable," or that recovery is "very remote").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1937, 1949 (2009). To be entitled to a dismissal based upon implausibility, a defendant must show that there is an alternative explanation that is much more obvious and plausible than the plaintiff's. *See Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009).

A court may not dismiss a complaint because it disbelieves the plaintiff's factual allegations. *See Twombly*, 550 U.S. at 556. In fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

Thus, notice pleading remains the rule, *see, e.g., Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009), and the principal purpose of Rule 8 is to provide adequate notice to the defendant so that he or she may prepare an answer. *See, e.g., Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL 3734123, *3 (D. Vt. Nov. 5, 2009) (complaint met the "specificity standard" where it "put the defendant on notice of the charges against it"). Neither *Twombly* nor *Iqbal* imposed a heightened fact-pleading regime. *See, e.g., Smith v. U.S.*, 561 F.3d 1090, 1103 (10th Cir. 2009) ("heightened fact pleading" was "expressly rejected"). As explained in *Hinterberger v. Catholic Health*, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) amended, 2009 WL 4042718 (W.D.N.Y. Nov. 19, 2009), "Rule 8 of the Federal Rules of Civil Procedure does

not require heightened fact pleading, but merely requires the plaintiff to 'give the defendant fair notice of [plaintiff's] claim and the grounds upon which it rests.'" *Id.* at *2, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp.2d 549, 559 (S.D.N.Y. 2011), quoting *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

## ALLEGATIONS OF THE AMENDED CLASS ACTION COMPLAINT

In her Amended Class Action Complaint, Shantavia Hart seeks redress on behalf of herself and a similarly situated class of individual consumers for the debt collection practices of Pacific, Fradkin and Kodeck. *See* ECF 14 at ¶ 1 .

Every debt subject to this dispute is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, because the debts arise from personal medical treatment. *See* ECF 14 at ¶ 3. For the same reason, each debt subject to this dispute is also alleged to be a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA. *See* ECF 14 at ¶ 4.

Shantavia Hart is and was at all times relevant, a "consumer" within the meaning of 15 U.S.C. § 1692a(3), because the Defendants sought to collect from her an alleged debt incurred for non-business purposes, in this case personal medical treatment. *See* ECF 14 at ¶ 9. For the same reason, the Plaintiff is also a "person" as that term is defined by the MCDCA and the MCPA. *Id.*

6

The Amended Class Action Complaint alleges that Pacific engages in the business of collecting debts alleged to be due to a third party known as "St. Paul & Biddle Medical Associates, P.A.," in the State of Maryland, and uses the United States Mail in furtherance of its collection of debts alleged to be due another. *See* ECF 14 at ¶ 10. Pacific is alleged to have violated Maryland law because it collected these debts even though it is not licensed as a collection agency with the State of Maryland, Department of Labor, Licensing and Regulation. *Id.*

Fradkin is alleged to be a law firm engaged in the business of collecting debts alleged to be due another in the State of Maryland. *See* ECF 14 at ¶ 11. Fradkin uses the United States Mail in furtherance of its collection of debts alleged to be due another and holds an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation, and uses the United States Mail in furtherance of their collection of debts alleged to be due another. *Id.*

Kodeck is also alleged to be a law firm engaged in the business of collecting debts alleged to be due another in the State of Maryland that used the United States Mail in furtherance of collection of debts. *See* ECF 14 at ¶12. However, unlike Fradkin, Kodeck has never held an active collection agency license with the State of Maryland, Department of Labor, Licensing and Regulation. *Id.*

All Defendants are alleged to have acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA and "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.  *See* ECF 14 at ¶ 14-15.

Shantavia Hart alleges that from November 16, 2005, through December 19, 2005, she

received physical therapy services at 1120 St. Paul Street, Baltimore, Maryland. *See* ECF 14 at ¶ 19. She was referred to this location by a personal injury attorney who represented that the bills would be paid out of the recovery from her personal injury lawsuit. *Id.* at ¶ 20. She was also advised that if there was no recovery in her favor, she would not be required to pay anything. *Id.* Ultimately, Shantavia Hart did not receive a recovery from her personal injury claim and never made any payment for the physical therapy services she received at 1120 St. Paul Street. *Id.*

Before undergoing treatment, Shantavia Hart was provided two sets of paperwork to complete. *See* ECF 14 at ¶ 21. The first set of documents related to treatment that was to be provided by "St. Paul & Biddle Medical Associates, P.A.," an entity that forfeited its corporate charter on October 7, 1999, and has not been authorized to transact business in Maryland since that date. *Id.*; *see also* ECF 13-3 (page 14 of 14). Pacific is not a successor in interest to "St. Paul & Biddle Medical Associates, P.A." *Id.*

The second set of documents related to treatment that was to be provided by "Pacific Rehab of Maryland, Inc." *See* ECF 14 at ¶ 22; *see also* ECF 13-3 (page 13 of 14). The proper corporate name of this entity as of the date of treatment was "Dr. Gober Pacific Rehab of Maryland, P.A." and the current corporate name of this entity is "Pacific Rehab of Maryland, P.A." -- one of the Defendants sued in this action. *Id.*

On January 5, 2011, Pacific caused a complaint to be filed against  Shantavia Hart in the District Court of Maryland for Baltimore City, on behalf of an entity identified as "Pacific Rehab & Sports Medicine, Inc." *See* ECF 14 at ¶ 23. On the date the complaint was filed, no entity by the name of "Pacific Rehab & Sports Medicine, Inc." was authorized to conduct

business in Maryland. *Id.*

Kodeck drafted and filed the complaint, but Fradkin ultimately became the law firm handling the case and continued to pursue the litigation on behalf of Pacific. *See* ECF 14 at ¶ 24.

Pacific and Kodeck attached to the complaint two account statements. *See* ECF 14 at ¶ 26. The first account statement was for services provided by Pacific Rehab of Maryland, Inc. in the amount of $2,374.00. *Id.*; ECF 13-3 (page 10-11 of 14). The second account statement was for services provided by St. Paul & Biddle Medical Associates, P.A. in the amount of $985.00. *Id.*; ECF 13-3 (page 12 of 14). Taken together, these statements indicated a total outstanding balance in the amount of $3,359.00. ECF 14 at ¶ 26. This notwithstanding, Pacific and Kodeck alleged in the complaint that the principal amount owed by Shantavia Hart was $6,999.00. The complaint also sought attorneys fees of $1,049.85 and "post judgment interest" of $2,099.70. *Id.*

Pacific and Kodeck attached to the complaint an "Agreement and Authorization for Payment" that provided for payment to an entity named "Pacific Rehabilitation of Maryland" a fictitious entity that has no legal existence in Maryland and is not a registered trade name in Maryland. *See* ECF 14 at ¶ 27.

Pacific also attached an "Assignment of Benefits" to the complaint that provided for payment to "St. Paul & Biddle Medical Associates, P.A.," the entity that had forfeited its corporate status on October 7, 1999, and was not authorized to transact business at the time the treatment was provided to Shantavia Hart. Additionally, there is no record establishing that Pacific is the owner or successor in interest of "St. Paul & Biddle Medical Associates, P.A." *See*

ECF 14 at ¶ 27.

The "Agreement and Authorization for Payment" and "Assignment of Benefits" included the following statement, signed by Shantavia Hart: "I waive any statute of limitations for collection of monies for services rendered . . ." *See* ECF 14 at ¶ 29. The Amended Class Action Complaint alleges that such language in contracts that purports to permanently waive the statute of limitations is void as contrary to public policy and not enforceable. *See* ECF 14 at ¶ 30.

The "Agreement and Authorization for Payment" and "Assignment of Benefits" also included the word "(SEAL)" next to the signature block for the patient. *See* ECF 14 at ¶ 31. The Amended Class Action Complaint alleges that merely including the "(SEAL)" next to the signature block for the patient did not transform the contract into a contract under seal, governed by a twelve-year statute of limitations because there was no express agreement set forth in the body of the contract that a twelve-year limitations period would apply to the contract. *See* ECF 14 at ¶ 32.

Notwithstanding these facts, Pacific, Kodeck and Fradkin sued Shantavia Hart and other members of the class more than three years after the last payment was made on balances allegedly owed. *See* ECF 14 at ¶ 33.

Kodeck inflated the amount of damages requested in the complaints he filed. *See* ECF 14 at ¶ 34. For example, in the suit he brought against he sued Shantavia Hart, Kodeck alleged that the cost of the treatment provided to Shantavia Hart was $6,999.00 when the account statements relating to the treatment disclose that the actual charges for the treatment totaled $3,359.00. *Id.*

Kodeck and Pacific also alleged that they were entitled to prejudgment interest accruing from the last date of treatment. When Fradkin took over the cases for Kodeck, it amended the request for prejudgment interest by claiming prejudgment interest on the entire balance accruing from the first date of treatment. In Shantavia Hart's case, Fradkin and Pacific sought to collect pre-judgment interest running from November 16, 2005, for all of the treatment provided to Shantavia Hart up through December 19, 2005. *See* ECF 14 at ¶ 35.

Shantavia Hart alleges that Defendants intentionally and knowingly filed and maintained debt collection lawsuits against her and other members of the class seeking to recover funds for services provided by "St. Paul & Biddle Medical Associates, P.A." when there was no enforceable contractual obligation to pay any amount to "St. Paul & Biddle Medical Associates, P.A." because once its corporate charter was forfeited, the corporation was dissolved by operation of law and ceased to exist as a legal entity. *See* ECF 14 at ¶ 36.

Defendants are also alleged to have filed and maintained lawsuits beyond the applicable statute of limitations, ECF 14 at ¶ 37, and to have claimed interest measured from the first date of treatment, when the contractual documents creating the alleged debt did not expressly authorize that interest would be due on that basis. *See* ECF 14 at ¶ 38.

Pacific and Fradkin ultimately dismissed the lawsuit filed against SHANTAVIA HART on July 10, 2012, after she filed an amended notice of intention to defend asserting that the claim was barred by limitations and had been brought on behalf of an entity that did not exist. *See* ECF 14 at ¶ 39.

Pacific and Fradkin then attempted to amend approximately 120 complaints that they had previously filed using an incorrect name for the plaintiff. *See* ECF 14 at ¶ 40.

## ARGUMENT

**A.     PACIFIC IS A DEBT COLLECTOR SUBJECT TO THE FDCPA**

The FDCPA defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

Shantavia Hart received physical therapy treatment from November 16, 2005 through December 19, 2005. *See* ECF 14 at ¶ 19. Some of this treatment was provided by a corporate entity that referred to itself as "St. Paul & Biddle Medical Associates, P.A." *See* ECF 14 at ¶ 21. This entity forfeited its corporate status on October 7, 1999, and was not authorized to transaction business at the time the treatment was provided to Shantavia Hart. Additionally, there is no record establishing that Pacific is the owner or successor in interest of St. Paul & Biddle Medical Associates, P.A. *Id.*

As part of its lawsuit against Shantavia Hart, Pacific sought to collect at least $985.00 for treatment provided to Shantavia Hart by St. Paul & Biddle Medical Associates, P.A. ECF 14 at ¶ 26. Therefore, the Amended Class Action Complaint adequately alleges that Pacific collected debts asserted to be owed or due a third party -- St. Paul & Biddle Medical Associates, P.A.

Pacific's motion to dismiss argues that Pacific was collecting its own debts because it is the owner of the following trade name -- "St Paul & Biddle Medical Associates." This argument fails because the contractual documents indicate that the agreement at issue was not entered into with "St Paul & Biddle Medical Associates" but rather was entered into with "St. Paul &

Biddle Medical Associates, **P.A.**" (emphasis supplied) a completely different organization for which Pacific can claim no ownership interest and that is not a registered trade name of Pacific.

The document at issue is found at ECF 13-3, page 14 of 14. Although the top of the document reads "ST. PAUL & BIDDLE MEDICAL ASSOCIATES ASSIGNMENT OF BENEFITS," the body of the document makes clear that the contractual relationship at issue was established between Ms. Hart and an entity named "St. Paul & Biddle Associates, **P.A**." *See id.* ("I hereby authorize and direct my attorney to pay St. Paul & Biddle Medical Associates, P.A. . . . I authorize and direct my attorney to pay . . . St. Paul and Biddle Associates, P.A. . . . I fully understand that I am responsible for any balance due . . . St. Paul & Biddle Associates, P.A. . . . I agree to immediately make payment to St. Paul & Biddle Associates, P.A., upon receipt of such monies . . . I give my consent to St. Paul & Biddle Associates, P.A. . . . to render treatment . . . I authorize payment of all medical benefits directly to St. Paul & Biddle Associates, P.A. . . ."). None of the promises contained in the document are directed to an entity named "St. Paul & Biddle Medical Associates."

"St. Paul & Biddle Medical Associates, **P.A.**" is not a trade name. Rather it is the name of a professional organization, albeit forfeited, that is required by Maryland law to include "P.A." as a "tail" to its name by Md. Code Ann., Corp. 1-502. *See also* COMAR 18.04.02.01(4).

Maryland law also requires that a trade name must be distinctive from the names of other entities used by third parties. The Maryland SDAT has adopted regulations governing this requirement. Under these regulations, "St. Paul & Biddle Medical Associates, P.A." and "St. Paul & Biddle Medical Associates" are distinctive names which explains why Pacific could file a trade name designation for "St. Paul & Biddle Medical Associates" even though another entity

was named "St. Paul & Biddle Medical Associates, P.A." *See* COMAR 18.04.02.05.C.[1]

Thus "St. Paul & Biddle Medical Associates" is, by definition, not the same entity as "St. Paul & Biddle Medical Associates, P.A." Rather, "St. Paul & Biddle Associates" is Pacific because Pacific is the corporation that owns the trade name. *See Thomas v. U.S. Inspect,* 2004 WL 2390072 (D. Md. Oct. 12, 2004) ("Use of a trade name is merely descriptive <u>of the business corporation using that name</u>; without more it does not create a separate legal entity") (emphasis supplied). This fact, however, does not alter the conclusion that Pacific regularly collects debts owed to a distinct third party called "St. Paul & Biddle Medical Associates, P.A."

Pacific also argues, in a footnote, that this allegation in insufficient and that it does not qualify as a "debt collector" because debt collecting is not its principal business. In this regard, the Amended Class Action Complaint alleges that Pacific 'regularly collect[s] or attempt[s] to collect, directly or indirectly, debts asserted to be owed or due another." *See* ECF 14 at ¶ 14.

As explained in *Oppong v. First Union Mortg. Corp.*, 407 F. Supp. 2d 658, 666 (E.D. Pa. 2005) aff'd in part, vacated in part, 215 F. App'x 114 (3d Cir. 2007), "The definition of 'debt collector' is in the disjunctive. In other words, a debt collector is one whose 'principal purpose' is the collection of debts of another or one who 'regularly' collects or attempts to collects the debts of another. *See* 15 U.S.C. § 1692a(6). Both prongs are entitled to their full import."

In affirming the District Court, the Third Circuit explained:

> Wells Fargo's primary argument appears to be that, because the proportion of its business that involves collecting others debts is so small in relation to its other business of originating mortgages, as a matter of

---

[1] "If a trade name does not include a tail and the only difference between it and another entity's name is a tail, the names are distinctive (Example: The trade name 'ABC' is distinctive from 'ABC, Inc.')."

> law it does not "regularly" collecting debts. However, even though this issue is an open in this circuit, Wells Fargo provides no authority from any other circuit that supports their interpretation of the law. The authority from our sister circuits weighs heavily against Wells Fargo's position. The Fifth Circuit, in *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997), held that "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity." The Ninth Circuit, without inquiring into the proportion of its business consisted of debt collection activities, found that Western Union "regularly" collected debts because it engaged in debt collection in the usual course of its business. *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142, 1146 (9th Cir.1998). And the Second Circuit recently overturned a district court that had found in favor of Wells Fargo's position. In *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004), the Second Circuit held that a law firm was "regularly" engaged in debt collection by assessing "facts closely relating to ordinary concepts of regularity" regardless of whether the entity derives significant portion of its business from debt collection.

*Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 119 (3d Cir. 2007) (footnote omitted that explained why *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir.1999) is inapposite).

In *Oppong*, the Court held that the frequency of debt collecting activity, as opposed to the proportion of the activity devoted to debt collecting, was the proper test for the "regularly" prong of the "debt collector" definition:

> The Court will adopt the frequency approach for two reasons. One, the aggregate approach strips the "principal purpose" prong of its meaning, making it superfluous or redundant. Two, to construe "regular" to mean frequently and consistently, and "principal purpose" to mean the proportion of the debt collection activities in relation to the overall business, gives meaning to the congressional intent that the term "debt collector" apply in the disjunctive. The frequency approach, therefore, ensures that both phrases have meaning within the context of the FDCPA and that neither is surplusage. *See King*, 502 U.S. at 221, 112 S.Ct. 570 (statute, plain language or not, must be read as a whole); *Cooper*, 396 F.3d at 312 (avoid an interpretation that would render any phrase superfluous).

*Oppong*, 407 F. Supp. 2d at 666. Because Wells Fargo collected on 534 mortgages in default

over an 18-month period, the District Court concluded that it qualified as an entity that "regularly" collected debts, even though 141,597 loans were not in default when purchased by Wells Fargo.

Although discovery will be necessary in order to determine how frequently Pacific has sued to collect debts owed to St. Paul & Biddle Medical Associates, P.A., at this juncture the Amended Complaint alleges that Pacific has filed approximately 430 collection lawsuits, a number that is sufficiently large to support the Plaintiff's allegation that Pacific "regularly" collects debt owed to a third party.

Finally, Kodek's suggestion that the manner in which it captioned the complaint can be excused as a mere misnomer missed the mark by a wide margin. The Amended Class Action complaint no longer focuses on the names used in the caption. Rather, the issue is that the Defendants brought suit to collect debts owed to a corporate entity -- St. Paul & Biddle Medical Associates, P.A. -- whose charter was forfeited and which is not the same entity as the entity using the trade name "St. Paul & Biddle Medical Associates."

## B.   PACIFIC IS VICARIOUSLY LIABLE FOR THE FDCPA VIOLATIONS OF ITS AGENTS KODECK AND FRADKIN

Even if Pacific does not meet the FDCPA's definition of "debt collector," it is still vicariously liable for the FDCPA violations of Kodeck and Fradkin. "Under Maryland law, . . . '[a] principal is prima facie liable for the acts of his agent done in the general course of business authorized by him.'" *Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749 (D. Md. Apr. 15, 2011) (quoting *Carroll v. State*, 65 Md. 551, 3 A. 29, 29 (Md. 1885)). In *Winemiller*, this Court rejected an argument by two co-defendants who claimed not to have

16

directly engaged in any illegal conduct, explaining that "[u]nder the legal principles of Maryland agency law discussed above, Plaintiffs may still be able to hold Defendants liable if even if they hired a third-party to pursue the debt collection claims." *Winemiller v. Worldwide Asset Purchasing, LLC*, 2011 WL 1457749 (D. Md. Apr. 15, 2011).

Numerous cases have found a collection agency to be an agent for which the creditor is responsible. *E.g., Patzka v. Viterbo College*, 917 F. Supp. 654 (W.D. Wis. 1996) (finding collection agency to be agent of college resulting in the college's liability under a state statute for the collector's demands for illegal fees and interest); *Casewell v. Cross*, 120 Mass. 545 (1876) (creditor liable for false arrest of debtor by collection agency which advertised it would collect by treating debtors "with delicacy, so as not to offend them, or with such severity as to show that no trifling is intended"); *McNeal v. Steinberger*, 135 P.2d 490 (Okla. 1943) (collection agency owed fiduciary duty of an agent to creditor); *Drisol v. Household Credit Servs., Inc.,* 989 S.W.2d 72 (Tex. App. 1998) (while agency's death threats and job contacts were beyond the scope of its duties, Household could have ratified the agencies abuses as found by the jury); *Morante v. American General Fin. Ctr.*, 157 F.3d 1006 (5th Cir. 1998) (where a collection subsidiary of a finance company had the right of control over a debt collection agency, the subsidiary was liable for punitive damages resulting from the agency's debtor harassment); *Taylor v. Checkrite, Ltd.,* 627 F. Supp. 415 (S.D. Ohio 1986) (Checkrite, a collector on dishonored checks and a credit reporting agency, was responsible for the FDCPA violations of its franchisee agents where Checkrite exercised control over the activities of the franchise which resulted in the violations); *Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (Tex. App. 1988) (creditor was held responsible under agency principles for torts

committed by private attorney retained for collection efforts; the attorneys, in turn, were held responsible for torts committed by constable and deputy in the course of an execution and levy).

Although there are decisions from other Circuits that support Pacific's argument, this Court and others have previously held that creditors and collection agencies are individually liable for their attorney's violations of the FDCPA. *See Hauk v. LVNV Funding, LLC,* 749 F. Supp. 2d 358, 366 (D. Md. 2010) ("It is unlikely Congress intended to permit a debt collector to avoid liability for violations of the FDCPA disclosure requirements simply by hiring a law firm to make court filings that would otherwise be subject to the statute."). Other courts have reached the same result. *See, e.g., Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir. 1994) (finding an in house debt collector vicariously liable and holding "[i]f we were to conclude, as Citicorp urges, that debt collectors are shielded from liability for venue violations whenever a legal action if filed by an attorney, we would have to decide that section 1692i was superfluous as originally enacted"). *See also Ditty v. CheckRite, Ltd.,* 973 F. Supp. 1320 (D. Utah 1997); *Newman v. CheckRite California, Ltd,* 912 F. Supp. 1480 (M.D. Ala. 1987); *Martlsolf v. JBC Legal Group, P.C.,* 2008 WL 275719 (M.D. Pa. Jan. 30, 2008); *Oei v. N. Star Capital Acquisitions, LLC,* 486 F. Supp.2d 1089 (C.D. Cal. 2006); *Caron v. Charles E. Maxwell, P.C.,* 48 F. Supp.2d 932, 936 (D. Ariz. 1999); *First Interstate Bank of Fort Collins v. Soucie,* 924 P.2d 1200, 1202 (Colo. App. 1996).

These decisions are more persuasive because they are consistent with traditional, common law, principles of agency.

**C.   THE PLAINTIFF HAS PROPERLY ALLEGED THAT PACIFIC AND FRADKIN VIOLATED THE FDCPA BY COLLECTING DEBTS WITHOUT A LICENSE FOR FORFEITED CORPORATIONS, FILING TIME BARRED LAWSUITS, AND SEEKING INTEREST THAT WAS NOT DUE.**

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

The FDCPA is a strict liability statute that provides for actual or statutory damages upon

the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinkle v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

"In order to successfully make a claim under the FDCPA, a plaintiff must show that he or she has been the 'object of collection activity arising from consumer debt,' that the defendant is a debt collector governed by the FDCPA, and that the defendant has 'engaged in an act or omission prohibited by the FDCPA.'" *Grant-Fletcher v. Brachfeld Law Group, PC*, 2012 WL 2523094 (D. Md. June 28, 2012) (quoting *Dikun v. Streich*, 369 F. Supp.2d. 781, 784–85 (E.D.Va. 2005)). *See also Brown v. Lanham Ford Inc.*, 2010 WL 313253, at *2 (D.Md. Jan.20, 2010).

Plaintiff's Amended Class Action Complaint sets forth four plausible violations of the

20

FDCPA.

**1.      Defendants Sued Maryland Consumers to Collect Debts that Were Not Enforceable Because St. Paul & Biddle Medical Associates, P.A. is a Dissolved Corporation.**

St. Paul & Biddle Medical Associates, P.A. forfeited its corporate status on October 7, 1999. ECF 14, ¶ 21.

Maryland law is clear that "[w]hen a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the corporation is dissolved by operation of law and ceases to exist as a legal entity." *See Kroop & Kurland, P.A. v. Lambros*, 118 Md. App. 651, 657, 703 A.2d 1287, 1289 (1998) (citing *Atlantic Mill & Lumber Realty Co. v. Keefer*, 179 Md. 496, 499-500, 20 A.2d 178 (1941); *Patten v. Board of Liquor License Com'rs for Baltimore City*, 107 Md.App. 224, 233-34, 667 A.2d 940 (1995); *Scott v. Seek Lane Venture, Inc.*, 91 Md.App. 668, 685-86, 605 A.2d 942, cert. denied, 327 Md. 626, 612 A.2d 257 (1992); *Cloverfields Improvement Assoc., Inc. v. Seabreeze Properties, Inc.*, 32 Md.App. 421, 424-26, 362 A.2d 675, modified in part and aff'd, 280 Md. 382, 373 A.2d 935 (1977)).

As explained in *Moore v. Baltimore Am. Mortg. Corp.*, 2010 WL 4285013 (D. Md. Oct. 29, 2010):

> In Maryland, when a corporation forfeits its charter "the powers conferred by law on the corporation[ ] are inoperative, null, and void as of the date of the proclamation [of forfeiture]." Md. Code Ann., Corps. & Ass'ns § 3-503(d). Thus, "all powers ... including the power to sue or be sued," are extinguished during the forfeiture period. *Dual, Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 857 A.2d 1095, 1101 (2004).

*See also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 3476994 (D. Md. Aug. 8, 2011) reconsideration denied,  2011 WL 6837656 (D. Md. Dec. 28, 2011), appeal dismissed (Feb. 23,

2012) ("When a corporation forfeits its charter in Maryland, "the powers conferred by law on the corporation[ ] are inoperative, null, and void as of the date of the proclamation of forfeiture." . . . These powers include the right to sue and be sued.") (citing *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163, 857 A.2d 1095 (2004) and Md. Code Ann., Corps & Ass'ns § 2-103(2)).

At all times relevant to this dispute St. Paul & Biddle Medical Associates, P.A. was dissolved and failed to exist as a legal entity. Therefore, it had no authority to conduct business in Maryland or to sue its patients for failure to pay for the treatment provided. Additionally, because St. Paul & Biddle Medical Associates, P.A. ceased to exist on October 7, 1999, Pacific cannot establish that it is a corporate successor to St. Paul & Biddle Medical Associates, P.A. Therefore, Pacific had no legal standing to sue Shantavia Hart in its own name (or by using a trade name) on the contract that Ms. Hart entered into with "St. Paul & Biddle Medical Associates, P.A."

Subsection 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." By its own terms, the subsection addresses the abusive practice of suing on an unenforceable contract. As established above, a defunct corporation may not sue to collect for an alleged breach of contract. Therefore, the allegation that Defendants Pacific, Kodek and Fradkin sued consumers to collect amounts allegedly owed to St. Paul & Biddle Medical Associates, P.A. sets forth a plausible claim under the FDCPA.

### 2.      Defendants Sued Maryland Consumers on Time-Barred Debt.

Having waited more than three years past the date of treatment, Pacific was time barred from suing Shantavia Hart on an "account stated" theory.[2]  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.").

For this reason, Pacific sued Shantavia Hart on a breach of contract theory of liability, supporting its claim with two documents that Pacific contends created a contractual obligation enforceable against Shantavia Hart. The lawsuit was brought more than five years after she received treatment because the two contracts included a provision waiving any statute of limitations. *See* ECF 14 ¶ 29. These waivers are unenforceable and void under Maryland law as against public policy. *See Ahmad v. Eastpines Terrace Apartments, Inc.*, 200 Md. App. 362, 376, 28 A.3d 1, 9, cert. denied, 424 Md. 55, 33 A.3d 982 (2011) ("any permanent waiver of the statute of limitations offends Maryland public policy and is unenforceable.").

Defendants now argue that the waivers did not apply in this case because they had twelve years in which to sue Shantavia Hart for failing to pay for the treatment. Defendants contend that the documents signed by Ms. Hart were "contracts under seal" because each document include the preprinted word "seal" next to the signature block where Shantavia Hart

---

[2] A creditor can establish liability on an "account stated" theory by producing evidence that the debtor admitted that the sum or money stated in an account constitutes a present existing debt. *See Baltimore County v. Archway*, 35 Md. App. 158 (1977). Although this admission may be inferred, the creditor must prove that a document setting forth the amount owed was actually delivered to the debtor and that there was no objection to the document setting forth the account from the debtor.

added her signature.

The leading case on this issue is *Warfield v. Baltimore Gas & Electric Co.*, 307 Md. 142, 143, 512 A.2d 1044 (1986), where the Court of Appeals held that, as a general proposition, "the inclusion of the word 'seal' in a pre-printed form executed by an individual [wa]s sufficient to make the instrument one under seal." In that case, the Court of Appeals quoted with approval the following language from *General Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F. Supp. 137, 140 (D. Md. 1938):

> If the contract is signed by an individual opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, ***where there is nothing on the face of the paper to indicate the contrary*** . . . . A recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract.

*Id.* at 143–44 (quotations omitted, emphasis supplied). The court in *General Petroleum*, supported its conclusion with the following language from Restatement (Second) of Contracts § 98 (1981):

> ***Unless extrinsic circumstances manifest a contrary intention***, the delivery of a written promise by the promisor amounts to the adoption of any seal then on the document which has apparent reference to his signature or to the signature of another party to the document.

23 F. Supp. at 144 (emphasis supplied).

The Court in *Warfield* also quoted with approval the following passage from *Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003, 1007 (4th Cir.1936):

> Whether a mark or character shall be held to be a seal depends on the intention of the executant, *as shown by the paper*. (Italics added in *Warfield*). And, as the word 'seal' in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to make the instrument a sealed instrument, which should be held conclusive by the court, in the

> absence of other indications to the contrary appearing on the face of the instrument itself.

307 Md. at 145, 512 A.2d 1044.

Thus, the rule established by *Warfield, General Petroleum* and *Kalin* is that a signature opposite the word "seal" is sufficient to create a specialty governed by Maryland's twelve-year statute in limitations <u>unless</u> there is a contrary indication of a different statute of limitations in the body of the document.

In this case, unlike *Warfield, General Petroleum* and *Kalin* there clearly is a contrary indication in the bodies of the documents because each includes an express agreement that no limitations period would apply. *See* ECF 14 ¶ 29 ("I waive any statute of limitations for collection of monies for services rendered . . ."). Because of this extrinsic evidence of a contrary intention, the documents do not qualify as contracts under seal.

Therefore, the documents were not "contracts under seal" governed by a twelve-year statute of limitations because the express language in the bodies of the agreements provided that there was to be <u>no</u> statute of limitations. Because these types of waivers are void as against public policy, the only limitations period that can legally apply to the contracts is the default three-year statute of limitations established by Md. Code Ann., Cts. & Jud. Proc. § 5-101.

The documents make clear that Pacific required patients to sign contractual documents waiving any statute of limitations defense. It and its lawyers should not be given the benefit of a twelve-year fall back position when the unambiguous intent of "St. Paul & Biddle Medical Associates, P.A." and "Pacific Rehab of Maryland, Inc." was to include a waiver of limitations in its contracts with its patients. Statute of limitations waivers are particularly deceptive to the

hypothetical least sophisticated consumer. Even in the face of a "seal," a consumer sued after year 12 would nonetheless conclude that there was no statute of limitations defense due to the waiver included in the documents.

Based on these facts and legal principles, the Amended Class Action Complaint alleges that it was the standard policy and practice of Pacific and Kodeck to file lawsuits to collect debts after the three year statute of limitations had expired. *See* ECF 14 at ¶ 46. Although Fradkin did not file the lawsuits it continued to pursue the time barred lawsuits after substituting as counsel for Kodeck.

These allegations are sufficient to allege a violation of the FDCPA under *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D.Ala. 1987), which held that the debt collector's filing of a lawsuit on an apparently time-barred debt, without having first determined after a reasonable inquiry whether the limitations period had been tolled, was a violation of the FDCPA.

In *Kimber* the plaintiff claimed that a debt collector violated § 1692f by filing a time-barred lawsuit against her. Section 1692f provides that, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Kimber argued that filing a lawsuit to collect on a debt that appears time-barred, without first determining after a reasonable inquiry that the limitations period is due to be tolled, constitutes an unfair and unconscionable practice offensive to § 1692f. The court agreed with Kimber, explaining:

> "Statutes of limitations are not simply technicalities. On the contrary, they have been long respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio*, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). They reflect a strong public policy, as determined by legislative bodies and courts, that "it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail

over the right to prosecute them.' " *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (emphasis added), quoting *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). These statutes therefore "afford[ ] plaintiffs what the legislature deems a reasonable time to present their claims," while at the same time "protect[ing] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Kubrick*, 444 U.S. at 117, 100 S.Ct. at 357.

However, because these statutes are based on concepts of what is just and fair, "most courts and legislatures have recognized that there are factual circumstances which justify an exception to these strong policies of repose. For example, defendants may not, by tactics of evasion, prevent the plaintiff from litigating the merits of a claim, even though on its face the claim is time-barred." *Tomanio*, 446 U.S. at 487–88, 100 S.Ct. at 1797. These exceptions to the statutes are generally referred to as "tolling." *Id.*

The court agrees with Kimber that a debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt. As previously demonstrated, time-barred lawsuits are, absent tolling, unjust and unfair as a matter of public policy, and this is no less true in the consumer context. As with any defendant sued on a stale claim, the passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt. Indeed, the unfairness of such conduct is particularly clear in the consumer context where courts have imposed a heightened standard of care -- that sufficient to protect the least sophisticated consumer. Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

*Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987). *See also Spencer v.*

*Henderson-Webb*, 81 F. Supp.2d 582 (D. Md. 1999) (representing that the debt could be collected for twelve years when it was subject to a three-year statute of limitations violated §§ 1692e(2)(A) and 1692f(1)); *McCollough v. Johnson, Rodenberg &* Lauinger, 610 F. Supp.2d 1247 (D. Mont. 2009) (a debt collector violated the FDCPA by using the courts to attempt to collect a time-barred debt); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D.Del. 1991) (threatening to file lawsuit that the debt collector knows or should know is time-barred constitutes a violation of FDCPA); *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, 2001 WL 1035726 (N.D. Ill. Sept. 4, 2001) (consumer's allegations that collection attorney filed suit on time-barred debt were sufficient to survive debt collector's motion to dismiss FDCPA action); *Ramirez v. Palisades Collection LLC*, 2008 WL 2512679 (N.D. Ill. June 23, 2008) ("Attempts to collect on plainly time-barred debts are actionable under the FDCPA.").

3. **Defendants Sued Maryland Consumers to Collect Interest Measured from the First Date of Treatment, When the Contractual Documents Creating the Alleged Debt did not Expressly Authorize that Interest Would be Due on that Basis.**

Subsection 1692e(2) and 1692f(1) also address the practice of collecting an amount greater than that which is owing. In particular, these sections have been interpreted in the context of debt collectors who have charged interest or service charges which were not expressly provided for as a part of the debt either by agreement or force of law. *See, e.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939 (9th Cir. 2011) (summary judgment on §§ 1692e(2) and 1692f(1) claims was affirmed where defendant attempted to collect attorney fees that were not expressly authorized by applicable law or consumer's contract).

Courts across the country have held that deceptive and unlawful attempts to collect interest in violation of state law violate both FDCPA §§ 1692e and 1692f(1). *See, e.g., Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *5 (N.D. Ill, Sept. 26, 2003) (finding violations of §§ 1692e(2) when making false statements that contained improper interest charges and 1692f(1) when such charges violate of the law); *Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1504-05 (D. N.M. 1994) ("Courts employ these FDCPA provisions where debt collectors attempt to collect monies that cannot legally be collected."); *Melillo v. Shendell & Assoc., P.A.*, 2012 WL 253205, at *5-6 (S.D. Fla. January 26, 2012) (Plaintiff stated a claim under § 1692e when debt collector requested miscalculated interest, and under § 1692f when debt collector sought more interest than permitted by law); *Pacheco v. Joseph McMahon Corp.*, 2012 WL 774943 at *2 (finding §§ 1692e(2)(A) and 1692f(1) violations when debt collector unlawfully requested post-judgment interest); *Sunga v. Broome*, 2010 WL 3198925 (E.D. Va. Aug. 26, 2010) (demands for interest not permissible under state law actionable under § 1692e and 1692f); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 , 1031-32 (9th Cir. 2010) (finding allegations of illegal interest charges requested by debt collector in complaint actionable under §§ 1692e and 1692f)*; Meija v. Marauder Corp.*, 2007 WL 806486, at *6 (N.D. Cal. 2007)(considering whether attempts to collect interest were illegal under §§ 1692e and 1692f)

The key part of improper prejudgment interest analysis under both FDCPA §§ 1692e and 1692f(1) is whether the attempt to collect prejudgment interest is permitted under state law or the contract between the parties. If state law (or the contract between the parties) does not authorize the interest requested by a debt collector, the debt collector can be held liable

under the FDCPA. *See, e.g., Martinez*, 867 F. Supp. at 1507 (looking to state law and finding "that prejudgment interest is permissible 'as a matter of right when the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices.'); *Mejia*, 2007 WL 806486, at *7 (finding no FDCPA violation when interest charge permissible under state law); *Acik v. I.C. System, Inc.*, 640 F. Supp. 2d 1019, 1027-28 (N.D. Ill 2009) (finding a violation of 1692f because neither the contract nor state law permits the interest fee at issue); *Sunga*, 2010 WL 3198925, at *4 (looking to condominium bylaws for interest allowable on condominium assessments); *Ballou v. Law Offices of Howard Lee Schiff, P.C.*, 713 F. Supp.2d 79 (D. Conn. 2010) (looking to state law regarding post-judgment interest to determine if debt collectors demand for post-judgment interest violated the FDCPA); *Carrizosa v. Stassinos*, 2010 WL 144807, at *1-2 (N.D. Cal. January 10, 2010) (looking to state law governing prejudgment interest); *Eckert v. LVNV Funding LLC*, 647 F. Supp.2d 1096, 1103 (E.D. Mo. 2009) (same); *Hylkema v. Rentcollect Corp.*, 2006 WL 2819357 at *2 (Sept. 28, 2006) (finding interest charge permissible under state law); *Maldonado v. CACV of Colorado, LLC*, 2007 WL 174085, at *2 (D. Ariz. Jan. 18, 2007) (applying state law on post-judgment interest demand). In particular, the Federal Trade Commission's published staff commentary on the FDCPA has noted:

> A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) [sic] the charge is expressly provided for the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent.

*Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 n. 32 (2000) (quoting 53 Fed. Reg. 50097, 50108 (eff. March 20, 1978).

Although Maryland law recognizes that the trier of fact has discretion to award prejudgment interest, "[i]f the contractual obligation be unilateral and is to pay a liquidated sum of money at a certain time, interest is almost universally allowed from the time when its payment was due." *I.W. Berman Properties v. Porter Bros., Inc.*, 276 Md. 1, 18 (1975) (citing *Weant v. Southern Tr. Co.*, 112 Md. 463, 473 (1910); *See also Baltimore County, Maryland v. Aecom Servs., Inc.*, 200 Md. App. 380, 424, 28 A.3d 11, 37 (2011) (recognizing that prejudgment interest is allowed as a matter of right when "the obligation to pay and the amount due [have] become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date") (quoting *Buxton v. Buxton*, 363 Md. 634, 656-57, 770 A.2d 152 (2001).

The legal rate applicable of prejudgment interest is six percent (6%). *Federal Sav. and Loan Ins. Corp. v. Quality Inns, Inc.*, 876 F.2d 353 (4th Cir. 1989).

Fradkin and Pacific violated state law (and therefore the FDCPA) when they attempted to collect interest on Ms. Hart's entire bill dating back to the first day of treatment because they sought interest measured from a date before the payment was due. Fradkin and Pacific cannot legally collect on the first day of treatment six percent of the total balance because much of the balance related to treatment that occurred ***after*** the first date of treatment. ECF 14, ¶ 35. In other words, Fradkin and Pacific sought to collect pre-judgment interest for the treatment that occurred on December 19, 2005, running from November 16, 2005 -- more than a month

before the charges had been incurred.

Contrary to Defendant's assertions, attempts to collect-prejudgment interest fall under the FDCPA. The *Sayyed* case cited by Defendants applies only to attorney's fees. *Sayyed* held that including a request for attorney's fees was not actionable under the FDCPA because the agreement between the creditor and the debtor called permitted the collection of "reasonable attorneys fees." *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp.2d 635, 638 (D. Md. 2010). "Reasonable" is a discretionary standard left for the court to decide. This case is inapplicable to prejudgment interest because, as noted above, Maryland law provides clear standards defining permissible prejudgment interest requests instead of a looser "reasonableness" standard. Thus, prejudgment interest requests are not discretionary like the attorney's fees clause at issue in *Sayyed*, and are awarded as a matter of course when prayed for in debt collection lawsuits. This is why debt collectors are required to provide interest worksheets with their complaints and updated interest worksheets at the time of judgment.

In addition, Defendants Fradkin & Weber, P.A. and Pacific Rehab of Maryland, P.A. cannot argue that its Second Amended Late Fee and Interest Worksheet was "a request directed to the court, not a communication directed to the debtor"[3] like the attorney's fees request in *Sayyed*. Here, the amended interest worksheet filed by Fradkin & Weber, P.A. on behalf of Pacific Rehab of Maryland, P.A. was served on Shantavia Hart and is stamped with the following: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN EFFORT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." Thus, Defendant's acknowledge that the Second Amended Late Fee and

---

[3] *Sayyed*, 733 F. Supp at 649.

Interest Worksheet is actually a communication directed to the debtor.

Finally, there can be no question that the FDCPA has been violated in those instances where judgments were entered against Class members that included improperly calculated prejudgment interest based upon the improper interest worksheets prepared by Fradkin.

### 4.    Defendants Violated the FDCPA by Collecting Debts on Behalf of an Unlicensed Collection Agency.

The Maryland Collection Agency Licensing Act ("MCALA") requires that "a person must have a license whenever the person does business as a collection agency in the State," Md. Code Ann., Bus. Reg. § 7-301(a), and defines "collection agency" as "a person who engages directly or indirectly in the business of: (1)(i) collecting for, or soliciting from another, a consumer claim. . ." *Id.* at § 7-101(c). A "consumer claim" is a claim that "arises from a transaction in which, for a family, household or personal purpose, the [Maryland] resident sought or got credit, money, personal property, real property, or services." *Id.* at § 7-101(e).

The Amended Class Action Complaint alleges that Pacific engages in the business of collecting debts alleged to be due to a third party known as "St. Paul & Biddle Medical Associates, P.A.," *See* ECF 14, ¶ 10. Because Pacific is engaged in the business of collecting debts alleged to be due another in the State of Maryland, it was required to be licensed under the MCALA, Md. Code Ann., Bus. Reg. § 7-101, *et seq,*.

The Amended Class Action Complaint also alleges that Kodeck has never held an active collection agency license. *See* ECF 14, ¶ 12.

Despite not being licensed, Pacific and Kodeck filed collection lawsuits. In *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731 (D. Md. 2011), this Court held that "filing of

33

lawsuits [by unlicensed collection agencies] against the class members constitutes 'a threat to take ... action that cannot legally be taken' in violation of 15 U.S.C. § 1692e(5). . ." *See also Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010) (holding that allegations that the defendant was debt collecting without a Maryland license stated a claim under § 1692f because "[a]s the Eleventh Circuit recently concluded, a debt collector's failure to register under a state debt collection law "is an appropriate consideration in deciding whether [its] 'means' of collection were 'unfair or unconscionable.' ") (quoting *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir.2010)).

Kodeck argues that it is exempt from licensing, but misreads the narrow exemption from licensing found at Md. Code Ann., Bus. Reg. § 7-102(9). That provision exempts from licensure a "lawyer who is collecting a debt for a client" unless the lawyer has no employees who are not lawyers and who are not "engaged primarily to solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency." Determination of whether this exemption applies is a question of fact for which Kodeck will have the burden of proof. It is not an argument that can be determined at the motion to dismiss stage, or until the Plaintiff has been given the opportunity to conduct discovery to determine whether Kodeck had an employee that removed its firm -- like every other law firm with a significant debt collecting practice -- from the exemption found at Md. Code Ann., Bus. Reg. § 7-102(9).

**D.   THE PLAINTIFF HAS ADEQUATELY ALLEGED VIOLATIONS OF THE MARYLAND CONSUMER DEBT COLLECTION ACT AND THE MARYLAND CONSUMER PROTECTION ACT.**

The conduct of Pacific, Kodeck and Fradkin also supports a claim under the MCDCA and MCPA.

**1.   The Maryland Consumer Debt Collection Act's Applicability Does Not Hinge on the Validity of the Underlying Debt.**

Defendants argue that MCDCA § 14-202(8) applies only to collection methods of valid debts.[4] This interpretation is incorrect. MCDCA § 14-202(8) states that Defendants may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Plaintiff has never admitted the validity of the alleged debt, but in fact has plead just the opposite. Defendants' filing and continuance of a lawsuit against Plaintiff more than three years after the treatment was provided was both a "claim" and an "attempt" to enforce an invalid debt. No right exists to enforce invalid debts. Thus, by filing and continuing the lawsuit against Plaintiff beyond the statute of limitations, Defendants have claimed and attempted to enforce a right that did not exist in the first place.

The statute's reference to "alleged debt" does not limit its reach to only debts that are assumed to be valid, but rather makes the most grammatical sense if interpreted to include both valid and invalid debts. The phrase "alleged debt" is intended to be inclusive so as to capture any debt that is alleged to exist by the collector, whether valid or not.

To hold that the MCDCA does not apply to collector's attempts to enforce invalid debts would lead to absurd results. Under Defendants' analysis, a collector could create a debt out of

---

[4]   Defendants rely on *Fontell v. Hassett*, 870 F. Supp.2d 395 (D. Md. 2012) for this proposition. However, this case was not decided on these grounds.

35

thin air and attempt to enforce it against a consumer with impunity under the MCDCA. Surely such conduct is just as coercive and abusive as the other violations in the MCDCA.

Moreover, the Fourth Circuit and this court have previously applied the MCDCA to cases where the underlying debt was invalid. *See, e.g., Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed.Appx. 254 (4th Cir. 2012) (applying MCDCA when lawsuit was filed against person who was not indebted to the collector); *Kouabo*, 336 F. Supp.2d (applying the MCDCA to a motion for judgment filed despite the nonexistence of consumer's default);

Finally, even if Plaintiff ever had a valid debt due to Pacific or "St. Paul & Biddle Medical Associates, P.A.," attempts to collect the debt beyond the statute of limitations, to collect inflated principal amounts, to collect improper interest, and to collect without a license all constitute improper methods of debt collection. Thus, Defendants still violated the MCDCA by attempting to enforce rights that did not exist with respect to the debt. *See, e.g., Akalwadi v. Risk Managment Alternatives, Inc.*, 336 F. Supp.2d 492 (D. Md. 2004) (applying MCDCA to allegation of collector's inflation of the debt); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp.2d 719 (D. Md. 2011) (applying MCDCA to collection of debts without the required license).

### 2.   Defendants Possessed the Knowledge Required by the Maryland Consumer Debt Collection Act.

As explained in *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011):

> The Maryland Consumer Debt Collection Act ("MCDCA") prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md.Code Ann., Com. Law §§ 14–201 to 14–204. . . .

36

> The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md.Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13–301(14)(iii).

Section 14–202 of the MCDCA states that "[i]n collecting or attempting to collect alleged debt, a collector may not . . . (8) claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Comm. Law § 14–202(8). This statute has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right. *Spencer v. Hendersen–Webb, Inc.*, 81 F. Supp.2d 582 (D. Md. 1999) (holding that the "knowledge" required by § 14–202 of the MCDCA refers to actual knowledge or reckless disregard as to the falsity of the information or the existence of the right).

In this case, the Plaintiff alleges that Pacific and the other Defendants acted "intentionally and knowingly" by filing and maintaining a lawsuit on behalf of St. Paul & Biddle Associates, P.A. after its charter had been forfeited (ECF 14 at ¶ 36); filing and maintaining lawsuits beyond the applicable statute of limitations (ECF 14 at ¶ 37); and claiming total balances due and interest measured from the first date of treatment without contractual support for an accrual of interest on that basis (ECF 14 at ¶ 38). Kodeck is also alleged to have acted in a similar fashion when it sued for $6,999.00 when the account statements showed that the amount owed was $3,359.00.

These allegations are supported by other allegations establishing that this conduct was repeated over and over by the Defendants. *See* ECF 14 at ¶44 ("A sample of 20 cases filed within the last year in Baltimore City by PACIFIC REHAB OF MARYLAND, P.A. and

37

FRADKIN & WEBER, P.A., reveals that 17 of the 20 cases (85 percent) sought to collect amounts from consumers based on contracts entered with "St. Paul & Biddle Medical Associates, P.A"); ¶46 ("A sample of 20 cases filed within the last year in Baltimore City by PACIFIC REHAB OF MARYLAND, P.A. and FRADKIN & WEBER, P.A., reveals that the lawsuits were filed beyond the statute of limitations in 75 percent of the cases (15 out of 20)"); ¶48 ("A sample of 20 cases filed in Baltimore City within the last year by PACIFIC REHAB OF MARYLAND, P.A. and FRADKIN & WEBER, P.A., reveals that interest was charged from at least the first day of treatment in 90 percent of the cases (18 out of 20)").

Maryland law is clear that ignorance of the law does not relieve the Defendants of the consequences of their wrongful acts. *Spencer v. Hendersen–Webb, Inc.*, 81 F. Supp.2d 582, 594 (D.Md.1999) ("the term 'knowledge' in the [MCDCA] does not immunize debt collectors from liability for mistakes of law."). *See also, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1612 (2010) (holding that the FDCPA's bona fide error defense does not apply to mistakes of law because "[o]ur law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor laced actual knowledge that her conduct violated the law."); *Flohr v. Coleman,* 245 Md. 254, 267, 225 A.2d 868, 875 (1967) ("A motorist is presumed to know the law regulating the use of motor vehicles. That is, ignorance of that law will not relieve him from the legal consequences of a wrongful act."); *Benik v. Hatcher*, 358 Md. 507, 532, 750 A.2d 10, 24 (2000) ("Just as a motorist is presumed to know the law regulating the use of motor vehicles, . . . so too is a landlord presumed to know the requirements of the City Code pertaining to the habitability of leased premises. In either case, it is the actions and omissions that have the legal effect the law

prescribes, and thus must be evaluated, not the actor's knowledge or ignorance.")

Moreover, knowledge is imputed to Kodeck and Fradkin by signing pleadings in the cases pursued against Plaintiff and class members she seeks to represent. Pursuant to Maryland Rule 1-311(b) the effect of a signature of an attorney on a pleading or paper constitutes a certification that "the attorney has read the pleading or paper; that to the best of the attorney's knowledge, information, and belief, there is good ground to support it . . ." By signing the pleadings, knowledge is thus imputed to Kodeck and Fradkin that they knew the lawsuit was being filed by Pacific to collect a debt owed to "St. Paul & Biddle Medical Associates, P.A.," requested an inflated principal amount, was based on a contract that purported to waive the statute of limitations, and, in the case of Fradkin, knowledge of an improper prejudgment interest amount.

Therefore, the Defendants are presumed to know the law that establishes a statute of limitations and requires corporations to be in good standing before bringing a lawsuit and requires that a claim for interest have a contractual or other legal basis. For this reason, the Plaintiff need only establish that the filing of and litigating the lawsuits by Defendants was intentional and knowing, which is not credibly in dispute, especially since the Defendants repeatedly filed similar lawsuits against other consumers.

Pacific's reliance on *Harkins v. Diversified Collection Services, Inc.*, 2012 WL 5928997 (D. Md. Nov. 26, 2012) is misplaced. In that opinion, Judge Messitte provided guidance to a *pro se* plaintiff on the elements that he should allege when filing an amended complaint alleging that the defendant improperly pulled his credit on a debt that it did not possess the right to collect.

39

Kodek's reliance on *Kouabo v. Chevy Chase Bank*, 336 F. Supp. 2d 471 (D. Md. 2004) fares no better. In that *pro se* case, Judge Messitte **denied** a debt collecting law firm's motion for summary judgment which argued that there could be no MCDCA claim against it because it had no knowledge that it was suing on a settled account because it did not know the consumer was making payments directly to the credit card company:

> As for the Peroutka Defendants, it is clear that in their individual capacity, they did not have actual knowledge that they had no right to seek enforcement of the Chevy Chase settlement agreement. Nevertheless, the Peroutka Defendants seem to have acted out of the blue in filing suit against Kouabo - never checking with Chevy Chase as to the status of Kouabo's payments and never checking with either Chevy Chase or Pasadena Receivables as to whether Kouabo had been advised of the sale of his account. While the Peroutka Defendants may have been acting based on information from Pasadena, that cannot insulate them from potential liability. As the record stands, a trier of fact could find that any reliance on what Pasadena might have said was unreasonable.

*Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 476 (D. Md. 2004).

Additionally, this case is easily distinguished from the factual setting in *Fontell v. Hassett,* 870 F. Supp. 2d 395, 408 (D. Md. 2012), which held that "[w]here the law's application to the facts is unclear, however, as appears to have been the case with the limitations period, and Defendants had a meritorious argument that the limitations period had not passed, it would be proper for Defendants to bring suit to resolve such issues." In this case there is no dispute of the facts relevant to the limitations issue because there is no dispute as to when the contracts were breached. The mistake made in this case was a mistake of law by the Defendants in pursuing litigation against the Plaintiff and the Class she seeks to represent more than three years after the dates upon which the contracts were breached.

Just as the Peroutka firm acted "out of the blue" in *Kouabo,* Kodek acted similarly in this case by filing lawsuits without even determining whether  St. Paul & Biddle Associates, P.A. was in good standing and without investigating the enforceability of the limitations waiver in the contract documents. For its part, Fradkin had no legal or factual basis supporting the manner in which it attempted to collect pre-judgment interest after it took over handling the cases.

The fact that Ms. Hart admits that she received medical treatment does not defeat her claim under the MCDCA because the MCDCA claim alleges that there was no enforceable contract to seek payment for this service and, in any event, that Pacific and Kodeck waited too long to sue her for the non-payment, so as to invalidate the debt they alleged they were owed by Ms. Hart. Thus, this case is focused on the illegal debt collecting activities of Pacific and Kodeck in, among other things, attempting to collect on a time barred debt.

Kodeck's argument that the amount sued for in the complaint was the result of a clerical error, again raises a question for fact on a issue for which it will have the burden of proof and for which discovery will be necessary before the Court can properly address the issue. At this juncture, the Amended Complaint adequately alleges that Kodeck intentionally and knowingly filed a lawsuit seeking an inflated amount of damages from the Plaintiff. Finally, unlike the FDCPA count (which is ***not*** alleged against Kodeck), there is no bona fide error defense to claims under the MCDCA and MCPA, and none of the cases cited on page 20 of Kodeck's memorandum have any applicability to this issue.

Shantavia Hart has adequately alleged actual damages in support of her MCDCA and MCPA causes of action. *See, e.g.*, ECF 14 at ¶¶ 67, 76, 86:

> As a direct consequence of Defendants' acts, practices and conduct, SHANTAVIA HART and the class she seeks to represent suffered actual damages, including having to respond to collection lawsuits improperly brought against them, having money judgments wrongfully entered against them, all resulting in embarrassment, emotional distress, anger and frustration and causing actual injury or loss and are entitled to damages. . . .

### 3.    Collecting Debts Without a License Also Violates the MCDCA.

In *Hilco* this court held that an unlicensed "collection agency" that filed collection lawsuits violated § 14–202(8) of the MCDCA because this conduct constituted an attempt to enforce a right with knowledge that the right does not exist, explaining:

> This Court has previously construed the level of knowledge required under the MCDCA and has held that "[c]onsidering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term 'knowledge' in the Act does not immunize debt collectors from liability for mistakes of law." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp.2d 582, 594 (D.Md.1999). In addition, the "knowledge" requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp.2d 471, 475 (D.Md. 2004) (citing *Spencer*, 81 F. Supp.2d at 595). Moreover, this Court has further noted that "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Spencer*, 81 F. Supp.2d at 595 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)) (in turn, quoting *FTC v. Colgate–Palmolive Co.*, 380 U.S. 374, 393, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965)). In the present case, Hilco undoubtedly went perilously close to an area of proscribed conduct in failing to abide by Maryland's licensing laws for debt collectors, and as discussed above, actually crossed the line.

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011); *See also Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012) (" . . .Defendants' violation of the MCDCA for attempting to collect debts without a license constitutes an "unfair or deceptive trade practice" under the MCPA, and the management agent and its employees must be found to

have violated that statute as well.") (citing *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732-33 (D.Md. 2011)). *See also Grant-Fletcher v. Brachfeld Law Group, PC,* 2012 WL 2523094 (D. Md. June 28, 2012) ("a violation of the MCALA licensing requirement may support a cause of action under FDCPA Section 1692e(5) or MCDCA § 14–202(8) . . . because, if a collection agency is not licensed to do business in Maryland, it would be illegal for it to threaten to take legal action against a debtor.").

A three year statute of limitations applies to MCDCA claims. For this reason, Shantavia Hart has alleged a plausible cause of action under the MCDCA against Fradkin, Pacific and Kodeck.

### 4.   The Maryland Consumer Protection Act Applies to Otherwise Exempt Organizations Acting as Debt Collectors.

As explained in *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011):

> The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md.Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13–301(14)(iii).

*See also Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012) (". . . .Defendants' violation of the MCDCA for attempting to collect debts without a license constitutes an 'unfair or deceptive trade practice' under the MCPA, and the management agent and its employees must be found to have violated that statute as well.")

The MCDCA clearly does not provide any exemption for physical therapists or medical providers and only a very narrow exemption for lawyers without any non-lawyer employees primarily engaged in debt collecting activities. Nonetheless, Pacific, Kodeck and Fradkin each

argue that it is covered by an exemption to the MCPA under Md.Code Ann., Com. Law § 13–104.

"[I]n construing legislative enactments, all statutes relating to the same subject matter are to be considered and harmonized as far as possible." *May v. Warnick*, 227 Md. 77, at 83, 175 A.2d 413, at 415 (1961). Since lawyers and physical therapists who engage in the business of debt collection can be held liable under the MCDCA, it follows that the legislature also intended that they would be liable under MCPA when the basis of liability is the violation of the MCDCA. Thus, the two statutes can best be harmonized by limiting the MCPA's exemptions to MCPA violations that are not derivative of MCDCA violations. *Cf. Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012) (dismissing MCPA claim when no MCDCA claim existed)

This interpretation is also consistent with the public policy espoused in the 1986 amendments to the FDCPA. When originally enacted, the FDCPA provided an exemption for lawyers. Congress amended the FDCPA in 1986 to eliminate the attorney exemption after concluding that attorneys were some of the most egregious violators of the FDCPA, and that the exemption had encouraged unscrupulous creditors to avoid FDCPA liability by seeking unscrupulous attorneys to collect their debts. Data showed that by 1985, due to the FDCPA's original attorney exemption, more lawyers were regularly collecting consumer debts than persons in the non-lawyer debt collection industry, and that some firms were advertising their FDCPA exemption as an advantage. *See Oversight Hearing on FDCPA and H.R. 4617 Before the Subcommittee on Consumer Affairs and Coinage of the House Committee on Banking, Finance and Urban Affairs*, 98th Cong., 2d Sess. (Jan. 31, 1984); *Hearings on H.R. 237, Before the Subcommittee on Consumer Affairs and Coinage of the House Committee on Banking,*

*Finance and Urban Affairs*, 99th Cong., 1st Sess. (Oct. 22, 1985); H.R. Rep. No. 405, 99th Cong., 1st Sess. (Nov. 26, 1985) *reprinted in* 1986 U.S.C.C.A.N. 1752, 132 Cong. Rec. H10534 (daily ed. Dec. 2 1985) (statement of Rep. Annunzio).

Exempting debt collecting lawyers from MCPA liability would limit the remedy provided to consumers by the MCDCA because it would remove the ability to be awarded attorneys fees. This would create a potential loophole in the MCDCA's enforcement mechanism which could potentially result in an increase in unscrupulous debt collection conduct.

Therefore, the Amended Class Action Complaint adequately alleges plausible violations of the MCPA.

## CONCLUSION

As demonstrated herein, Plaintiff has properly pled plausible causes of action under the FDCPA, MCDCA and MCPA entitling the Plaintiff and the class she seeks to represent to actual and statutory damages.

For these reasons, the motions to dismiss filed by Fradkin (ECF 11);  Kodeck (ECF 12); and Pacific (ECF 13) should be denied. Should the Court grant any Defendant's motion in whole or in part, Plaintiff respectfully requests leave to file a Second Amended Class Action Complaint.

## REQUEST FOR HEARING

Undersigned counsel requests a hearing.

Dated: January 2, 2013            Respectfully Submitted,


                                  */s/ E. David Hoskins*
            t                     E. David Hoskins, Bar No. 06705
                                  LAW OFFICES OF E. DAVID HOSKINS, LLC
                                  Quadrangle Building at Cross Keys
                                  2 Hamill Road, Suite 362
                                  Baltimore, Maryland 21210
                                  (410) 662-6500 (Tel.)
                                  (410) 662-7800 (Fax)
                                  *dhoskins@hoskinslaw.com*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was served electronically through the Court's CM/ECF system upon counsel for all parties.

January 2, 2013.                  */s/ E. David Hoskins*