IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHANTAVIA HART,

    *Plaintiff*,

    v.

PACIFIC REHAB OF MARYLAND,
P.A., et al.,

    *Defendants*.

Civil Action No. ELH-12-2608

**MEMORANDUM OPINION**

    This case was spawned by a debt collection lawsuit instituted in a Maryland State court against Shantavia Hart, plaintiff, to recover for medical services rendered to Hart. After the collection case was voluntarily dismissed, plaintiff initiated this putative class action against the following defendants: Pacific Rehab of Maryland, P.A. ("Pacific Rehab"); A.J. Kodeck, Chartered ("Kodeck"), the law firm that filed the State case against Hart; and Fradkin & Weber, P.A. ("F&W"), the law firm that succeeded Kodeck in handling the State case.[1]

    The litigation is rooted in the events of November and December 2005, when Hart obtained physical therapy and other medical treatment for personal injuries she sustained as a result of the alleged negligence of a tortfeasor. Hart does not dispute that she received the treatment and admits that she never paid for it. In January 2012, about six years after the treatment was provided, "Pacific Rehab & Sports Medicine, Inc., a/t/a Pacific Rehab of MD,

---

[1] Plaintiff filed her Class Action Complaint on August 30, 2012 (ECF 1). In response to the defendants' motions to dismiss (ECF 11, 12, 13), plaintiff filed an Amended Class Action Complaint on November 13, 2012 ("Complaint," ECF 14), which is at issue here. This Court exercises federal question jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331. I will discuss, *infra*, the Court's discretion under 28 U.S.C. § 1367(a) to exercise supplemental jurisdiction over the claims founded on Maryland law.

Inc., a/t/a St. Paul & Biddle Middle Assoc." (collectively, the "State plaintiff"), filed suit in a Maryland court to recover the money owed by Hart for the medical services she received. Plaintiff claims that Pacific Rehab and Kodeck violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count I), and that all three defendants violated the Maryland Consumer Debt Collection Act ("MDCPA"), Md. Code (2005 Repl. Vol., 2012 Supp.), § 14-201 *et seq.* of the Commercial Law Article ("C.L.") (Count II), as well as the Maryland Consumer Protection Act, C.L. § 13-101 *et seq.* (Count III).

Each defendant has filed a motion to dismiss, *see* ECF 19 ("Kodeck Motion"); ECF 20 ("F&W Motion"); ECF 21 ("Pacific Rehab Motion"), supported by a memorandum of law. *See* ECF 19-1 ("Kodeck Memo"); ECF 20-1 ("F&W Memo"); ECF 21-1 ("Pacific Rehab Memo"). Plaintiff filed a consolidated opposition, *see* ECF 22 ("Opposition," or "Opp."), and defendants replied. *See* ECF 23 ("Pacific Rehab Reply"); ECF 24 ("F&W Reply"); ECF 25 ("Kodeck Reply").[2] No hearing is necessary to resolve the motions. *See* Local Rule 105.6.

For the reasons that follow, I will grant defendants' motions as to plaintiff's federal claims (Count I), with prejudice. As to plaintiff's claims under Maryland law (Counts II and III), I decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Therefore, I will dismiss the State claims, without prejudice to plaintiff's right to pursue them.

**Factual Background**[3]

---

[2] Plaintiff also filed a motion for class certification. *See* ECF 26. With the consent of the parties, briefing of that motion was stayed, pending resolution of the defendants' motions to dismiss. *See* ECF 30. In view of the disposition of the motions to dismiss, the motion for class certification is denied, without prejudice.

[3] I have construed the facts alleged in the Complaint in the light most favorable to plaintiff. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, I have focused solely on the facts as they pertain to plaintiff, rather than the putative class. In *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted), the Supreme Court said:

In 2005, Hart was represented by counsel in regard to a personal injury matter.  Compl. ¶ 19.

Hart's lawyer "referred" her to a physical therapy provider located at 1120 St. Paul St.,

Baltimore, Maryland, for treatment of an unidentified injury.  *Id.* ¶¶ 19-20.  The attorney

represented to Hart that her medical bills for physical therapy "would be paid out of the recovery

from her personal injury lawsuit."  *Id.* ¶ 20.  The attorney also advised her that, "if there was no

recovery in her favor, she would not be required to pay anything."  *Id.*

From November 16, 2005 to December 19, 2005, plaintiff underwent approximately one

month of physical therapy and related medical treatment at 1120 St. Paul Street in Baltimore, at a

cost of $3,359.  *Id.* ¶¶ 19, 26.  Unfortunately for Hart, she did not prevail in her personal injury

lawsuit.  And, she admits that she never paid the fees she incurred for her medical treatment.  *Id*.

¶ 20.

On January 5, 2011, suit was filed against Hart in the District Court for Baltimore City.

*Id.* ¶ 23.[4]  A copy of the State complaint, along with its exhibits (collectively, the "Pacific Rehab

Complaint"), is attached to the Pacific Rehab Motion.  *See* Pacific Rehab Motion Exh. 6 (ECF

---

(…continued)

> "[T]hat a suit may be a class action . . . adds nothing to the question of standing,
> for even named plaintiffs who represent a class must allege and show that they
> personally have been injured, not that injury has been suffered by other,
> unidentified members of the class to which they belong and which they purport to
> represent." (Internal quotations omitted). *See also Warth v. Seldin*, 422 U.S. 490,
> 498  (1975) (holding that named class action plaintiff "must allege a distinct and
> palpable injury to [her]self, even if it is an injury shared by a large class of other
> possible litigants").

[4] Although the State suit was filed against Hart in January 2011, and she did not initiate
her federal suit until August 2012, defendants have not asserted that the FDCPA claim is barred
by the one-year statute of limitations in 15 U.S.C. § 1692k(d)

21-7).[5]  As noted, the case caption identified the plaintiff as "Pacific Rehab & Sports Medicine, Inc. a/t/a [also trading as] Pacific Rehab of MD, Inc. a/t/a St. Paul & Biddle Medical Assoc." According to Hart, "Pacific Rehab of Maryland, P.A. caused a complaint to be filed … on behalf of an entity identified as 'Pacific Rehab & Sports Medicine, Inc.'" Compl. ¶ 23. Further, Hart alleges that the suit was "drafted and filed" by Kodeck. Compl. ¶ 24.

The Pacific Rehab Complaint alleged, *inter alia,* that "through its subsidiaries" Hart received "physical therapy services" at her "request, Pacific Rehab Compl. at 7 ¶ 1; "demand for payment of said services was made," *id.* at 7 ¶ 2; and Hart "breached the . . . agreement by failing to pay for the services rendered." *Id.* at 7 ¶ 3.  Further, the State plaintiff claimed that "although demand for payment ha[d] been made . . . , [Hart] continues to refuse to pay the amount due and owing . . . to Pacific Rehab of Maryland." *Id.* at 7 ¶ 4.

Two account statements attached to the Pacific Rehab Complaint indicate that the medical treatment cost $3,359.  Compl. ¶ 26; *see* Pacific Rehab Compl. at 11-13.  However, Pacific Rehab alleged in the suit that Hart owed principal in the amount of $6,999.  Compl. ¶ 26; *see* Pacific Rehab Compl. at 7.  The suit also requested prejudgment interest "from the last date of treatment, December 19, 2005," Compl. ¶ 25, at a rate of six percent per annum, in the amount of $419.94.[6]  *See* Pacific Rehab Compl. at 10.  In the prayer for relief, the State plaintiff sought to recover $6999.00 for services rendered, attorney's fees in the sum of $1,049.85, and "Post

---

[5] As discussed, *infra,* I may consider the Pacific Rehab Complaint because it is integral to plaintiff's claims and its authenticity is not disputed.  Moreover, it is subject to judicial notice as a public record of the State court.

[6] Under Maryland law, with exceptions not applicable here, "[t]he Legal Rate of Interest shall be Six per cent. per annum . . . ."  Md. Const. art. 3, § 57; *see McDaniel v. Am. Honda Fin. Corp.*, 400 Md. 75, 84, 926 A.2d 757, 762-63 (2007).

-4-

Judgment Interest" in the amount of $2,099.70.[7]   Compl. ¶ 26; *see* Pacific Rehab Compl. at 7-8.

Although the "Wherefore" clause included a request for "Pre-judgment interest" and court costs,

no specific sums were requested.   Thus, the State plaintiff sought damages totaling $10,148.55,

inclusive of interest and attorney's fees.

In support of the request for counsel fees, the State plaintiff attached to the Complaint an

"Affidavit in Support of Prayer for Reasonable Attorney's Fees," signed by Ari Kodeck, Esquire,

as counsel for plaintiff.   He requested attorney's fees of fifteen percent "of the amount of the

judgment to be entered…."   In the affidavit, Mr. Kodeck noted that Hart "promise[d] to pay

reasonable attorney's fees, or attorney's fees up to fifteen percent (15%)," and he opined that

reasonable attorney's fees would be 15% "of the amount of the judgment to be entered…."   ECF

21-7 at 9.

The Pacific Rehab Complaint also included a "Notice" in bold letters that stated: "THIS

COMMUNICATION IS FROM A DEBT COLLECTOR, AND IS AN EFFORT TO COLLECT

A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

Pacific Rehab Compl. at 5 (emphasis in original).[8]

As observed, the State plaintiff appended to the suit two account statements, each

reflecting medical services rendered to Hart in November and December 2005, often several

times per week.   *See* Pacific Rehab Compl. at 11-13.   One statement itemized a list of medical

services provided under the name "Pacific Rehab of Maryland Inc.,"  which included, *inter alia*,

---

[7] Although the Pacific Rehab Complaint characterized the interest as "Post Judgment Interest," *see* Pacific Rehab Compl. at 8, the worksheet attached to the suit clearly indicated that Pacific Rehab was seeking prejudgment interest. *See id.* at 10.

[8] Plaintiff does not rely on this Notice in her Complaint.  Although she cites the Notice in her Opposition, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

"gait training"; "ultrasound"; "joint mobilization"; "therapeutic massage"; "pt education"; and "therapeutic activities."  *See id.* at 11-12.  The other statement, in the name of "St. Paul & Biddle Medical Assoc.," itemized services such as x-rays of plaintiff's spine and ribs.  *See id.* at 13.  Both statements identified 1120 St. Paul St. in Baltimore as the address for the medical provider.  *See id.* at 11, 13.

In addition, the State plaintiff attached to the suit copies of two agreements signed by Hart at the outset of her medical treatment.  *See* Compl. ¶¶ 27-28; Pacific Rehab Compl. at 14-15.  One is titled "Assignment of Benefits" ("Assignment, ECF 21-7 at 15), signed by Hart on November 14, 2005.  The other is titled "Agreement and Authorization for Payment" ("Agreement," ECF 21-7 at 14), signed by Hart on November 19, 2005,

As to the Assignment, it contains a header of "St. Paul and Biddle Medical Associates," and authorized Hart's insurance company to pay the healthcare provider directly.  In particular, the text "provided for payment to 'St. Paul & Biddle Medical Associates, <u>P.A.</u>'"  Compl. ¶ 21 (emphasis added).  The Assignment states, in relevant part:

> I hereby authorize and direct my attorney to pay to St. Paul & Biddle Medical Associates, P.A. such sums as may be due and owing to them for professional services rendered in the treatment of injuries sustained by me . . . .
>
> I hereby authorize my insurance carrier to pay directly to St. Paul & Biddle Medical Associates, P.A., such sums as may be due [and] owing to them. . . .
>
> I fully understand that I am responsible for any balance due as a result of any payment made by my insurance carrier . . . which is less than the amount billed by St. Paul & Biddle Medical Associates, P.A., and I waive any defense for non-payment.
>
> I waive any statute of limitations for collection of monies for services rendered and agree to pay legal interest and attorney fees accrued in pursuit of collection of monies for services rendered.

The Agreement has a header of "Pacific Rehabilitation of Maryland," and provided for payment directly to the healthcare provider, "Pacific Rehabilitation of Maryland." Compl. ¶ 27. The Agreement states, in relevant part:

> I hereby authorize and direct my attorney to pay to Pacific Rehabilitation of Maryland such sums as may be due and owing to them for professional services rendered in the treatment of injuries sustained by me . . . .
>
> I hereby authorize my insurance carrier to pay directly to Pacific Rehabilitation of Maryland such sums as may be due [and] owing to them. . . .
>
> I fully understand that I am responsible for any balance due as a result of any payment made by my insurance carrier . . . which is less than the amount billed by Pacific Rehabilitation of Maryland and I waive any defense for non-payment.
>
> I waive any statute of limitations for collection of monies for services rendered and agree to pay legal interest and attorney fees accrued in pursuit of collection of monies for services rendered.

Each document contains the preprinted word "(SEAL)" next to the signature block for the patient.  Compl. ¶ 31.  Thus, the word "(SEAL)" appears next to Hart's signature on both the Agreement and the Assignment.

Subsequent to the filing of the Pacific Rehab Complaint, Kodeck withdrew as counsel and was replaced by F&W.  Compl. ¶ 25.  F&W amended the request for prejudgment interest and filed an amended prejudgment interest worksheet, seeking interest on the entire balance as of Hart's first date of medical treatment.  *Id.* ¶¶ 25, 35.  In other words, F&W "sought to collect pre-judgment interest running from November 16, 2005, for all of the treatment provided to [plaintiff] up through December 19, 2005."  *Id.* ¶ 35.[9]

In response to the State suit, Hart's attorney (who is also her lawyer in the instant case), filed "an amended notice of intention to defend asserting that the claim was barred by limitations

_____

[9] The amount of interest sought in the amended prejudgment interest worksheet is not specified in plaintiff's Complaint, and the parties have not included it in any of the exhibits filed here.

and had been brought on behalf of an entity that did not exist." *Id.* ¶ 39.  On July 10, 2012, Pacific Rehab voluntarily dismissed its State collection action, with prejudice.  *Id.*[10]  This class action suit followed.

As noted, the State suit was instituted against Hart by "Pacific Rehab & Sports Medicine, Inc. a/t/a Pacific Rehab of MD, Inc. a/t/a St. Paul & Biddle Medical Assoc."  Hart takes issue with the legal status of these entities, and also seizes on discrepancies in the names of various entities, to support her claim that Pacific Rehab acted as a debt collector under the FDCPA.

With respect to Pacific Rehab & Sports Medicine, Inc., Hart avers: "On the date the [Pacific Rehab] complaint was filed, no entity by the name of 'Pacific Rehab & Sports Medicine Inc.' was authorized to conduct business in Maryland, having forfeited its charter on November 19, 1997.  Additionally none of the documents signed by [plaintiff] at the start of her treatment referred to 'Pacific Rehab & Sports Medicine, Inc."  Compl. ¶ 23.

As to "Pacific Rehab of MD, Inc.," plaintiff states that "the proper corporate name of this entity as of the date of treatment was 'Dr. Gober Pacific Rehab of Maryland, P.A.,' and the current corporate name of this entity is 'Pacific Rehab of Maryland, P.A.'"  *Id.* ¶ 22.  Moreover, she asserts that "there is no record establishing Pacific Rehab of Maryland, P.A. [as] the owner or successor in interest of 'St. Paul & Biddle Medical Associates, P.A.'"  Compl. ¶ 28.  With regard to the Agreement, which provided for payment to "Pacific Rehabilitation of Maryland," Hart contends that entity is "fictitious" and "has no legal existence in Maryland," nor is it "a registered trade name in Maryland."  Compl. ¶ 27.

---

[10] According to plaintiff, after the State plaintiff dismissed the suit, Pacific Rehab and F&W sought to amend approximately 120 complaints that were filed with the "incorrect name for the *plaintiff*."  Amended Compl. ¶ 40 (emphasis added).  Given that Hart is the plaintiff in the case *sub judice*, I assume that Hart's reference to "the plaintiff" in Compl. ¶ 40 was meant to refer to Pacific Rehab, the plaintiff in State court.

In addition, Hart asserts that Pacific Rehab of Maryland, P.A. "engages in the business of collecting debts alleged to be due to a third party known as 'St. Paul & Biddle Medical Associates, P.A.'"  *Id.* ¶ 10.  Further, she alleges that Pacific Rehab of Maryland, P.A. filed about "206 lawsuits seeking to collect for treatment provided by St. Paul & Biddle Medical Associates, P.A. between September 1, 2009 and August 28, 2012."  *Id.* ¶ 43.

With respect to "St. Paul and Biddle Medical Assoc.," an entity in the caption of the Pacific Rehab Complaint, plaintiff points out that the text of the Assignment identifies St. Paul & Biddle Medical Associates, **P.A.** as the healthcare provider/payee.  She also asserts that the P.A. "forfeited its corporate status on October 7, 1999, and thus "was not authorized to transact business" when treatment was provided to Hart.  Compl. ¶ 28; *see also* Compl. ¶ 21 (stating that St. Paul & Biddle Medical Associates, P.A. "forfeited its corporate charter on October 7, 1999, and has not been authorized to transact business in Maryland since that date.")  *Id.*

The public records of the Maryland Department of Assessments and Taxation "SDAT")[11] reflect that "St. Paul and Biddle Medical Associates" and "Pacific Rehab of Maryland" are trade names registered to "Dr. Gober Pacific Rehab of Maryland, P.A." since 2001.  *See* Pacific Rehab Motion Exh. 2, Exh. 3  (ECF 21-3 and 21-4) (trade name applications and renewal documents, including SDAT "Trade Name Approval Sheet"), *also available at* the SDAT website, http://sdatcert3.resiusa.org/ucc-charter/DisplayEntity_b.aspx?EntityID=T00155905&EntityName=ST.+PAUL+AND+BIDDLE+MEDICAL+ASSOCIATES&TabNum=2 (last visited Aug. 9, 2013). As indicated, plaintiff contends that, at the time of her treatment, Dr. Gober Pacific Rehab of Maryland, P.A. was "the proper corporate name" of the healthcare provider.  Compl. ¶ 22.  On July 28, 2012, "Dr. Gober Pacific Rehab of Maryland, P.A." filed Articles of Amendment

---

[11]   Pacific Rehab attached as exhibits to its motion records publicly available on the SDAT website.  As discussed, *infra*, they are subject to judicial notice.

changing its corporate name to "Pacific Rehab of Maryland, P.A." *See* Compl. ¶¶ 10, 22. Pacific Rehab Motion Exh. 5 (ECF 21-6) (Articles of Amendment), *also available at* the SDAT website, http://sdatcert3.resiusa.org/ucc-charter/DisplayEntity_b.aspx?EntityID=D02335453& EntityName=DR.+GOBER+PACIFIC+REHAB+OF+MARYLAND%2c+P.A.&TabNum=2 (last visited Aug. 14, 2013).

## Standard of Review

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See McBurney v. Cuccinelli,* 616 F. 393, 408 (4th Cir. 2010). To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief.'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 555. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Although the plaintiff need not include "detailed factual allegations," the rule demands more than bald and conclusory accusations or mere speculation. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (brackets in original) (internal quotation marks omitted). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see, e.g., Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied* ___ U.S. ____, 132 S. Ct. 402 (2011). But, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

The parties' disputes of fact ordinarily "cannot be decided on a motion to dismiss pursuant to Rule 12(b)(6)," *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009), because the court must construe the well-pled facts "in the light most favorable to the nonmoving party." *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011). Put another way, a motion pursuant to

Rule 12(b)(6) typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Ordinarily, in resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). In resolving a Rule 12(b)(6) motion, if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). There are some limited exceptions, however, by which a court may consider exhibits without converting the motion to one for summary judgment. For instance, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); *see Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows*

*Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Accordingly, I have considered the Pacific Rehab Complaint, along with its exhibits, which

defendants filed in support of their motions. *See* ECF 21-7.  They are integral to plaintiff's

Complaint, in that plaintiff's claims all arise from the State suit.  And, the authenticity of the

Pacific Rehab Complaint is not disputed.

Additionally, facts and documents subject to judicial notice may be considered by a

court, without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.),

*cert. denied*, ___ U.S. ___, 132 S. Ct. 115 (2011).   Therefore, I may take judicial notice of the

pleadings filed in the State law suit. *See Colonial Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.

1989).

I may also take judicial notice of the SDAT website, which summarizes Pacific Rehab's

corporate           status,           *available         at*        http://sdatcert3.resiusa.org/ucc-charter/Display

Entity_b.aspx?EntityID=D02335453&EntityName=PACIFIC+REHAB+OF+MARYLAND%2c

+P.A.&TabNum=1 (last visited August 2, 2013).[12]   *See Jeandron v. Bd. of Regents of Univ. Sys.*

*of Md.*, No. 12-1724, 2013 WL 541044, at *4 (4th Cir. Feb. 14, 2013) ("A court may take

judicial notice of information publicly announced on a party's web site, so long as the  web site's

authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting

Fed. R. Evid. 201(b)); *see, e.g.*, *Sears v. Magnolia Plumbing, Inc.*, 778 F. Supp. 2d 80, 84 n.6

(D.C.C. 2011) (taking judicial notice of corporate resolutions available on SDAT's website as

"verifiable public documents"); *see also McBurney*, 616 F.3d at 399 (approving lower court's

---

[12] Screenshots of the SDAT website providing the pertinent information are also attached
to Pacific Rehab's motion to dismiss.  *See* ECF 21-2 (screenshot of SDAT regarding "Pacific
Rehab of Maryland, P.A."); ECF 21-5 (same, as to trade name "Pacific Rehab of Maryland").
Their authenticity is not disputed by plaintiff.

taking judicial notice of a State website); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (judicially noticing voting-age population statistics publicly available on Virginia State website on review of dismissal of complaint under Fed. R. Civ. P. (12)(b)(6)).

And, I may take judicial notice of the ownership of the trade name St. Paul & Biddle Medical Associates, as documented by SDAT records and filed by Pacific Rehab in support of its Motion, *see* ECF 21-3 (trade name application and renewal documents, including SDAT "Trade Name Approval Sheet"), and made available on the SDAT website, http:// sdatcert3.resiusa.org/ucc-charter/DisplayEntity_b.aspx?EntityID=T00155905&EntityName=ST. +PAUL+AND+BIDDLE+MEDICAL+ASSOCIATES&TabNum=2 (last visited August 9, 2013).  *See Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1298 n.4 (S.D. Ala. 2011) (judicially noticing public records documenting defendant's trade name on 12(b)(6) motion); *Roberts v. America's Wholesale Lender*, No. 2:11-cv-597-DB-SA, 2012 WL 1379203, at *4 (D. Utah March 22, 2012) (stating, with respect to a Rule 12(b)(6) motion, that "the Court chooses to take judicial notice of the New York State document, submitted by Defendants, which shows AWL simply is a trade name for Countrywide Home Loans, Inc.").

### Discussion

### I.   *Count I: FDCPA Claims*

In Count I plaintiff sued Pacific Rehab and F&W (not Kodeck) for violations of the FDCPA.

Congress enacted the FDCPA in 1977, *see* Pub. L. 95-109, 91 Stat. 874 (1977), to protect consumers from debt collectors who engage in "abusive, deceptive, and unfair debt collection practices," and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."   15 U.S.C. § 1692(e); *see United*

*States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor.  *See Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

The statute applies only to conduct used to collect a "debt."  *See* 15 U.S.C. § 16923-f. The FDCPA defines "debt" as "an obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. . . ."  15 U.S.C. § 1692a(5). With respect to debt collection, the FDCPA imposes a variety of obligations and potential liabilities on "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose* of which is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*."  15 U.S.C. § 1692a(6) (emphasis added).  In other words, the FDCPA is concerned with "rights for consumers whose debts are placed in the hands of *professional* debt collectors for collection."  *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (emphasis added).

To state successfully a claim under the FDCPA, the complaint must allege that: 1) the defendant is a "debt collector," as defined in the FDCPA; 2) that the plaintiff was "the object of collection activity arising from consumer debt," as that term is defined in the FDCPA; and 3) that, in connection with the plaintiff's debt, the defendant engaged in an act or omission prohibited by the FDCPA.  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (alterations omitted).

Of relevance here, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C.

§ 1692e, including "[t]he threat to take any action that cannot legally be taken." *Id.* § 1692e(5). However, "several courts have also held that a statement must be *materially* false or misleading to violate Section 1692e." *Lane v. Fein, Such & Crane,* 767 F. Supp. 2d 382, 388 (E.D.N.Y. 2011) (citations omitted) (emphasis in *Lane*). The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f, including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

Hart articulated five grounds to support her claim that Pacific Rehab and F&W violated §§ 1692e and 1692f of the FDCPA, all of which relate to the State litigation: (1) "by bringing and maintaining lawsuits to collect debts allegedly owed to 'St. Paul & Biddle Medical Associates, P.A.,' an entity that forfeited its [corporate] charter and ceased to exist as a legal entity on October 7, 1999," Compl. ¶ 61; (2) "by using the District Court of Maryland to collect time-barred debts," *id.* ¶ 62; (3) "by suing or continuing a suit seeking an amount for treatment provided that was greater than the charges disclosed on the account statements," *id.* ¶ 63; (4) "by attempting to collect interest on the entire balance measured from the first date of service," *id.* ¶ 64; and (5) by suing to collect on consumer debts without a "collection agency license," as required under the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code (2010 Repl. Vol.),[13] § 7-301 of the Business Regulation Article ("B.R."). *See* Compl. ¶¶ 66-67.[14]

---

[13] I have cited to the version of the Maryland Code in effect at the time the Pacific Rehab Complaint was filed.

[14] In what is presumably a typographical error, the Complaint alleges that Pacific Rehab and F&W violated the FDCPA "by suing or continuing a suit at a time when A.J. KODECK, CHARTERED did not maintain a valid Maryland collection license." Compl. ¶ 65. However, because Count I is directed at Pacific Rehab and F&W, but not Kodeck, I will construe this allegation as if directed to F&W.

As I will explain, Hart's FDCPA claims against Pacific Rehab fail because Pacific Rehab is not a debt collector.  Nor is there a basis for plaintiff to assert vicarious liability against Pacific Rehab based on the alleged FDCPA violations of its attorneys.   Additionally, plaintiff's allegations as to F&W fail to state a claim for F&W's violation of the FDCPA, because F&W did not engage in any prohibited activity.

A.  Pacific Rehab

Hart alleges that Pacific Rehab is liable under the FDCPA as a debt collector.  In the alternative, Hart contends that, under agency principles, Pacific Rehab is vicariously liable for violations of the FDCPA committed by its attorneys.  Pacific Rehab denies that it qualifies as a "debt collector" under the FDCPA.  Instead, it maintains that it was a creditor attempting to collect on its own debt, *i.e.*, a debt that was owed to Pacific Rehab, and thus its conduct is not within the purview of the FDCPA.

i.   *Liability as a Debt Collector*

As indicated, the FDCPA defines "debt collector," in relevant part, as "any person who . . . *regularly* collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6) (emphasis added).  A defendant "must qualify as [a] 'debt collector[]' under the FDCPA to be liable for FDCPA violations." *Fontell v. Hassett*, 10-cv-01472-AW, 2012 WL 1409390, at *4 (D. Md. Apr. 20, 2012) (citing 15 U.S.C. § 1692k(a)).

"The FDCPA does not, however, apply to creditors collecting debts in their own names and whose primary business is not debt collection," or to the individual employees of such creditors.  *Kennedy v. Lendmark Fin. Servs.*, Civ. No. RDB-10-2667, 2011 WL 4351534, at *3 (D. Md. Sept. 15, 2011); *see Carter v. AMC, LLC*, 645 F.3d 840, 842 (7th Cir. 2011) ("An entity

that tries to collect money owed to itself is outside the FDCPA."); *Aubert v. American General Finance, Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) ("Creditors who collect in their own name and whose principal business is not debt collection . . . are not subject to the Act."); *Akpan v. First Premier Bank*, Civ. No. DKC-09-1120, 2010 WL 917886, at *4 (D. Md. Mar. 8, 2010). Thus, "[a]n entity that tries to collect a debt on its own behalf is not a debt collector under the FDCPA," *Fontell*, 2012 WL 1409390, at *4 (citing *Betskoff v. Enterprise Rent A Car Co. of Balt.*, ELH-11-2333, 2012 WL 32575, at *5 (D. Md. Jan. 4, 2012)). Rather, such an entity is a "creditor," a term broadly defined as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).

Creditors and debt collectors are generally distinct and "mutually exclusive" categories under the FDCPA. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). With exceptions not applicable here, the FDCPA does not apply to a creditor collecting on a debt that it "originated." 15 U.S.C. § 1692a(6)(F)(ii); *see Kennedy*, 2011 WL 4351534, at *3; *see also Pollice v National Tax Funding, L.P.*, 225 F.3d 379, 403 (3rd Cir. 2000). On the other hand, an entity to which a debt is owed falls outside the definition of "creditor" and qualifies as a "debt collector" if the entity "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another," 15 U.S.C. § 1692a(4), or if the "principal purpose" of the entity's business is debt collection. *Id.* § 1692a(6). The FDCPA's definition of "debt collector" also includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6); *see Cantencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc.*, 471 F.3d 780, 781 (7th Cir. 2006) (stating that a debt collector includes "any creditor who, in the process of collecting his own

debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts"); *Aubert*, 137 F.3d at 978.  In other words, the FDCPA applies when "a creditor uses a pseudonym to collect a debt—that is, poses as a debt collector." *Shula v. Lawent*, 359 F.3d 489, 491 (7th Cir. 2004); *see Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("[A] creditor becomes subject to the FDCPA if the creditor 'in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'") (quoting 15 U.S.C. § 1692a(6)). Plaintiff does not rely on this provision, however.

Other exceptions to the FDCPA's definition of "debt collector" limit, rather than expand, the definition.  *See* 15 U.S.C. § 1692a(6)(A)-(F).[15]  The exception to the definition of a debt

---

[15] The exceptions provide that the "term ['debt collector'] does not include" the following individuals or entities, 15 U.S.C § 1692a(6)(A)-(F):

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such

collector found in 15 U.S.C. § 1692a(6)(B) is relevant.  It provides that "a corporate affiliate is excluded from the Act's coverage so long as it satisfies two conditions:  (1) the affiliate collects debts only for entities with which it is affiliated or related; and (2) the principal business of the affiliate is not debt collection."  *Aubert*, 137 F.3d at 978.

The Pacific Rehab Complaint indicates that the State plaintiff filed suit in State court to collect on a debt that Hart owed for unpaid medical services rendered to Hart by one or more related healthcare entities.  *See generally* Pacific Rehab Compl. at 7-15.  The suit was styled "a/t/a" ("also trading as"), and identified three entities collectively as the plaintiff.  In particular, the State plaintiff alleged that, "through its subsidiaries," it had "rendered physical therapy services at the request of [Hart]."  *Id.* at 7 ¶ 1.  Further, it averred that "demand for payment of said services was made," *id.* at 7 ¶ 2, and that Hart had "breached the . . . agreement by failing to pay for the services rendered."  *Id.* at 7 ¶ 3.

Notably, and as discussed, two account statements were attached to the Pacific Rehab Complaint, detailing the medical services provided to Hart.  One account statement was issued under the name of "Pacific Rehab Of Maryland Inc.," a name virtually identical to one of the three entities identified as the plaintiff in the State suit.  In the State case, the word "of" was spelled with a lower case "o" and the word Maryland was abbreviated to "MD."  *See* Pacific Rehab Compl., ECF 21-7 at 2, 7, 11, 12.  The other account statement was issued in the name of "St. Paul & Biddle Medical Assoc.," identical to one of the entities that brought suit in the State case, and shorthand for "St. Paul & Biddle Medical Associates."  *See* Pacific Rehab Compl. at 2, 7, 13.

---

(…continued)

person as a secured party in a commercial credit transaction involving the creditor.

Hart complains that it was "Dr. Gober Pacific Rehab of Maryland, P.A." that actually treated her in 2005, now known as Pacific Rehab of Maryland, P.A.   "Pacific Rehab of Maryland" and "St. Paul & Biddle Medical Associates" have been registered trade names of Dr. Gober Pacific Rehab of Maryland, P.A. since 2001.  The use of a trade name "does not create a separate legal entity."  *See, e.g.*, *Thomas v. U.S. Inspect*, Civ. No. 04-1746-CCB, 2004 WL 2390072, at *2 (D. Md. Oct. 12, 2004) ("Use of a trade name is merely descriptive of the business corporation using that name; without more it does not create a separate legal entity.") (citing *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 635 n.2 (4th Cir. 2002)); *see also Mecco, Inc. v. Capital Hardware Supply, Inc.*, 486 F. Supp. 2d 537, 544 (D. Md. 2007).

Hart also looks to the Assignment that she executed at the outset of her medical treatment to support her position.   The header of the Assignment states: "ST. PAUL & BIDDLE MEDICAL ASSOCIATES."   Yet, the text of the Assignment authorized her insurance carrier to pay benefits directly to "St. Paul & Biddle Medical Associates, **P.A.**" for services rendered.  Hart insists that, because of the designation of "P.A.," the name is not a trade name.  "Rather it is the name of a professional organization that is required by Maryland law to include 'P.A.' as a 'tail' to its name." Opp. at 13 (citing Md. Code. (2007 Repl. Vol., 2010 Supp.) Corp. § 1-502).  Thus, Hart contends that her debt was owed to "St. Paul & Biddle Medical Associates, P.A.," an entity distinct from St. Paul & Biddle Medical Associates.  *See* Opp. at 12-14; Compl. ¶¶ 10, 36.

Hart's Complaint fails to allege that she received or thought she received medical treatment from the P.A.   Nevertheless, because the Pacific Rehab Complaint was filed by St. Paul & Biddle Medical Assoc., and not filed in the name of St. Paul & Biddle Medical Associates, P.A., Hart argues that Pacific Rehab sued to collect on a debt that was owed to the P.A., thereby rendering Pacific Rehab a debt collector.  *See* Opp. at 12-14.

Plaintiff also suggests that because the contractual relationship was between Hart and St. Paul & Biddle Medical Associates, U.P.A., Pacific Rehab "had no legal standing" to sue Hart on a contract she had with the P.A.   Opp. at 22 (emphasis in original).   Although the Agreement signed by Hart authorized payment to Pacific Rehabilitation of Maryland, Hart argues that the defendants "sued consumers to collect amounts allegedly owed to St. Paul & Biddle Medical Associates, P.A.," which "sets forth a plausible claim under the FDCPA."   Opp. at 22.

In Maryland, "the original common law rule was that 'privity' between the plaintiff and the defendant was necessary to maintain an action on a contract, which meant that one had to be a party to the contract in order to enforce it."   *Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 260, 969 A.2d 284, 295 (2009).   The errors, variations, or misnomers in the iteration of the names of the State plaintiff entities, if any, may have provided Hart with grounds for a defense to the collection suit.   But, under the facts alleged here, they do not transform the State plaintiff into a debt collector.   As the Second Circuit observed in *Maguire*, 147 F.3d 232, "a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage" if it uses "the 'name under which it usually transacts business, or a commonly-used acronym,' or any name that it has used from the inception of the credit relation."   *Id.* at 235 (Citations omitted).

The allegations of the Pacific Rehab Complaint and the documentation attached to it, which I am entitled to consider, clearly demonstrate that suit was filed to collect a debt for medical services rendered by one or more of the State plaintiff entities; suit was not filed on behalf of a third party.   The misnomers, if any, do not suggest that a third party was involved in

collecting the debts, nor do they suggest that the State plaintiff, as a creditor, sought to appear as a debt collector by using an alias or a pseudonym.  *See* 15 U.S.C. § 1692a(6)(B).[16]

   *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725 (7th Cir. 2004), is instructive.  In that case, the plaintiffs received cable service from an entity known to them as "AT&T Broadband," to which they refused to pay certain disputed charges.  *See id.* at 729.  The plaintiffs soon learned that "'AT&T Broadband' was not the name of a real entity or their actual creditor"; that their true cable service provider was an entity named "Chicago Cable"; and that Chicago Cable was a sister corporation to "AT&T Broadband, LLC" and shared a parent company, AT&T Corp.  *See id.* at 730.  After this discovery, the plaintiffs filed suit under the FDCPA, asserting that Chicago Cable had acted as a debt collector by using the name of a separate entity, AT&T Broadband.  *See id.*  at 730-31.  They also argued that Chicago Cable had committed a per se violation of the FDCPA by using names that it had failed to register as "service marks" or "assumed names," as required under Illinois law.  *See id.* at 739-40.

   The Seventh Circuit held that Chicago Cable was not a debt collector, despite using the name of AT&T Broadband in its dealings with the plaintiffs.  *Id.* at 739-40.  The court explained: "[T]he FDCPA's focus is not on whether the name used by the creditor is permitted by law, but on whether the name used results in the debtor's deception in terms of what entity is trying to collect his debt."  *Id.* at 740.  The court reasoned that because "Chicago Cable consistently represented itself as 'AT&T Cable Services' throughout its dealings . . . no deception as to what entity was trying to collect [the plaintiff's] debt [had] occurred."  *Id.*

---

[16] The confusion of names suggests that Dr. Gober owned or operated several related entities and created a "labyrinthine" business structure.  *Gutierrez*, 382 F.3d at 740.  The creation of subsidiaries and affiliate organizations is not uncommon in today's complex business world.  Nevertheless, the imprecise use of a business name may affect recovery on a breach of contract claim.  But, the misnomers do not necessarily turn any of the entities into debt collectors.

It follows that the designation or omission of "P.A." in a creditor's dealings with a debtor, does not subject the creditor to liability under the FDCPA if it does not result in a debtor's deception with respect to the debt. And, plaintiff has not alleged that she was deceived in any way by the designation of "P.A." in the text of the Assignment (*i.e.*, St. Paul & Biddle Medical Associates, P.A.) or the omission of "P.A." in the caption of the Pacific Rehab Complaint, or any other misnomers. Indeed, were such a contention made, it would not comport with the least sophisticated debtor standard, applied in FDCPA cases to determine if a violation of the statute has occurred. *See Nat'l Fin. Servs. Inc.*, 98 F.3d at 135-36.

The least sophisticated debtor standard "is an objective analysis," *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2nd Cir. 2005). It "asks whether the least sophisticated debtor would likely be misled or deceived by the communication at issue." *Grant-Fletcher v. Brachfeld Law Grp., PC*, WMN-11-2072, 2012 WL 2523094, at *3 (D. Md. June 28, 2012); *see Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). The standard assumes that the debtor "is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). But, the least sophisticated debtor need not be "a dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). Nor is the least sophisticated debtor a person "tied to the very last rung of the intelligence or sophistication ladder." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Under the circumstances outlined earlier, even the least sophisticated debtor would not have believed that the Pacific Rehab Complaint that was filed, *inter alia*, in the names of "Pacific Rehab of MD, Inc." and "St. Paul & Biddle Medical Assoc.," sought to collect a debt owed to a third party. The account statements, the Assignment, and the Agreement, all attached to the State suit, reflect that the suit sought to recover the unpaid bills for medical services rendered to

Hart by these entities or ones affiliated with them.  *See, e.g.*, *Suguilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868(PKC), 2011 WL 4344044, at *5 (S.D.N.Y. Sept. 8, 2011) (rejecting plaintiff's FDCPA claim predicated on law firm's use of name "Cohen & Slamowitz, LLP" instead of "Law Offices of Cohen & Slamowitz, LLP" because the names "are substantially similar," and therefore "using both of these names would not confuse the least sophisticated consumer into believing that these are two separate entities"); *Chiang v. Verizon New England Inc.*, No. 06-cv-12144-DPW2009, WL 102707, at *7 (D. Mass. Jan 13, 2009) ("A least sophisticated consumer, exercising even a modicum of reasonableness, would not conclude that 'Verizon Massachusetts' was a third party debt collection agency completely unrelated to 'Verizon' or 'Verizon New England, Inc.'"), *aff'd on other grounds*, 595 F.3d 26 (1st Cir. 2010); *Young v. Lehigh Corp.*, No. 80-C-4376, 1989 WL 117960, at *22 (N.D. Ill. Sept. 28, 1989) ("How the plaintiff (or anyone else, for that matter) could have been duped into believing that Lehigh Corporation was not affiliated with Lehigh Country Club, Inc. is a mystery.").

The case of *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 667 A.2d 649 (1995), is also informative, given that the collections suit was  filed in a Maryland court.  In *Testerman,* the Maryland Court of Appeals addressed a misnomer in a contract, where one of the contracting parties, a corporation, was misidentified as "Curtis G. Testerman, **Inc.**" instead of "Curtis G. Testerman **Company**."  *Id.* at 576, 667 A.2d at 652 (emphasis added).  However, "the identity of the corporation, Curtis G. Testerman Company, could be ascertained from the face of the contract and was apparent" to the other party.  Therefore, the Court concluded that the error did not preclude enforcement of the contract.  *Id.*  It reasoned: "We believe that '[a] mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent.'"  *Id.* (citation omitted).  *See also* William Meade Fletcher, FLETCHER

CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 3014, at 133 (1997) ("A mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent."); *accord Spanierman Gallery, PSP v. Love*, 320 F. Supp. 2d 108, 111-12 (S.D.N.Y. 2004); *Sunstone at Colorado Springs Homeowners Ass'n, Inc v. White*, 56 P.2d 127, 128-30 (Colo. App. 2002).

Plaintiff's attempt to turn a creditor into a debt collector based on a misnomer undermines the purpose of the FDCPA.  The statute was intended to thwart abusive and deceptive debt collection practices.  15 U.S.C. § 1692(e).  As a creditor seeking to recover on its own debt, under a registered trade name or other name used by an affiliated healthcare provider, of which the debtor was aware, Pacific Rehab does not qualify as a debt collector under the FDCPA.

Hart also argues that she stated a claim under the FDCPA because St. Paul & Biddle Medical Associates, P.A. forfeited its charter in 1999, and thus was not entitled to sue; Pacific Rehab & Sports Medicine, Inc. forfeited its charter in 1997; and Pacific Rehabilitation of Maryland is a fictitious entity.  Under Maryland law, a corporate entity that has forfeited its charter cannot sue to enforce a contract.  *See Stein v. Smith*, 358 Md. 670, 674, 751 A.2d 504, 506 (2000) (holding that breach of contract action filed by a corporation that forfeited its charter was a "nullity" and did not toll the statute of limitations); *accord Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 163, 857 A.2d 1095, 1101 (2004); *see also Atl. Mill & Lumber Realty Co. v. Keefer*, 179 Md. 496, 500-01, 20 A.2d 178, 181 (1941) (holding that corporation whose charter had been forfeited could not file a lien or an action to enforce the lien based on rights acquired during the life of its charter).  In *Stein*, the Maryland Court of Appeals explained: "One of the

powers of [a corporation] that bec[omes] 'inoperative, null, and void' upon forfeiture of its charter [is] the power to sue."  358 Md. at 675, 751 A.2d at 506 (citation omitted).

Assuming that the Pacific Rehab entities or St. Paul & Biddle Medical Assoc. lacked the capacity to sue, Hart would have had a valid defense in State court to their attempt to recover for her unpaid medical bills.  But, plaintiff has cited no authority for the proposition that a creditor becomes a debt collector under the FDCPA if, when the State suit was filed, the creditor lacked the capacity to sue due to forfeiture of a charter.  Put another way, under the facts as presented by Hart, the State plaintiff did not use any name indicating to the least sophisticated debtor that the suit was filed on behalf of an unrelated third party.  If Pacific Rehab is not a debt collector, it follows that there is no basis to find that it violated the FDCPA.

Finally, it is noteworthy that plaintiff has failed to allege that debt collection was Pacific Rehab's principal business, or that it regularly engaged in such activity.  Hart merely asserts that Pacific Rehab "engages in the business of collecting debts alleged to be due to a third party. . . ." Compl. ¶ 10.  By every indication, Pacific Rehab was a healthcare provider.  To be sure, Hart alleges that Pacific Rehab "filed and maintained approximately 206 lawsuits seeking to collect for treatment provided by St. Paul & Biddle Medical Associates, P.A. between September 1, 2009 and August 28, 2012."  Compl. ¶ 43.  But, some 206 suits, filed in regard to treatment over a three-year period, does not, on its face, suggest that the State plaintiff "regularly" collects debts owed to another, or that debt collection is its "principal" business. *See* 15 U.S.C. § 1692a(6). Therefore, on this basis, plaintiff has failed to state a claim under the FDCPA.

### ii. *Vicarious Liability*

Plaintiff also asserts that, even if Pacific Rehab does not qualify as a debt collector, Pacific Rehab is vicariously liable for the FDCPA violations of its agents, Kodeck and F&W.

*See* Opp. at 16.   As Judge Bennett recently observed in *Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, ___ F. Supp. 2d. ____, 2013 WL 2405309, at *7 (D. Md. May 31, 2013), "this Court has previously held that in most cases a creditor should not be held vicariously liable for the actions of its attorney acting as a debt collector."  In *Fontell v. Hassett*, 870 F. Supp. 2d 395, 412 (D. Md. 2012), for example, Judge Williams reasoned that vicarious liability would be proper only when a debt collector sought to evade liability under the FDCPA by hiring an attorney to act in its stead.  The court explained, *id.*:

> A debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA.  On the other hand, if the client is not a debt collector subject to liability under the FDCPA itself, then its decision to hire an attorney to engage in debt collection practices on its behalf would not be predicated on evading FDCPA liability, and imputing liability under those circumstances would not further the interests of the Act.

To be sure, in *Hauk v. LVNV Funding, LLC.*, 749 F. Supp. 2d 358, 366-67 (D. Md. 2010), Judge Blake recognized that "it is far from clear that [a debt collection company] cannot be held liable for the actions of its attorneys….   It is unlikely Congress intended to permit a debt collector to avoid liability for violations of the FDCPA … simply by hiring a law firm to make court filings that would otherwise be subject to the statute."  But, she did not resolve the issue, because the FDCPA claims in that case were going forward.

The defendant in *Hauk* was a debt collection company; Pacific Rehab is not a debt collection company.  The case law generally permits debt collectors, not creditors, to be held vicariously liable for the actions of their attorneys.  *See Ramsay*, 2013 WL 2405309, at *7 (declining to impute liability to creditor based on actions of its attorney, because there was "no concern . . . that [the creditor] employed [the attorney] to avoid compliance with the FDCPA, and . . . [i]mputing liability to [the creditor] would not further the interests of the FDCPA");

*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996) ("We do not think it would accord with the intent of Congress, as manifested in the terms of the [FDCPA], for a company that is not a debt collector to be held vicariously liable for a collection suit filing that violates the Act[.]"); *Bradford v. HSBC Morg. Corp.*, 829 F. Supp. 2d 340, 348-49 (E.D. Va. 2011) ("[A] creditor cannot incur vicarious liability for FDCPA violations by an independent debt collector that acts on the creditor's behalf.''").

Moreover, plaintiff does not allege that Kodeck violated the FDPCA. Therefore, it is axiomatic that no vicarious liability under the FDCPA may be asserted against Pacific Rehab on the basis of Kodeck's conduct, if that conduct did not violate the FDCPA. *See, e.g.*, *Washington v. CitiMortgage, Inc.*, No. 3:10-CV-887-JAG, 2011 WL 1871228, at *13 (E.D. Va. May 16, 2011) (rejecting plaintiffs' assertion of creditor's vicarious liability for its agent under the FDCPA because "they have not alleged anything that [the agent] has done that violates the Fair Debt Collections Practices Act").

Nor has plaintiff alleged a viable claim under the FDCPA as to F&W. Therefore, the suit does not allege a basis to impose vicarious liability upon Pacific Rehab based on the conduct of F&W.

## B. F&W

In 1986, Congress repealed the exemption for attorneys contained in the original version of FDCPA. *See* Pub. L. No. 99-361, 100 Stat. 768 (1986). The Supreme Court subsequently ruled that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995).

F&W does not dispute that it qualifies as a debt collector, or that plaintiff's medical bills qualify as a consumer debt subject to the FDCPA.  "Attorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA."  *McLean v. Ray*, 488 F. App'x 677, 684 (4th Cir. 2012) (citing *Heintz*, 514 U.S. at 292).  However, plaintiffs' allegations do not state a violation of the FDCPA on the five grounds asserted by plaintiff.[17]

### i.   *Maintaining a lawsuit on behalf of a fictional corporate entity*

Plaintiff contends that, in violation of 15 U.S.C. §§ 1692e and 1692f,  F&W maintained a lawsuit against her on behalf of an entity (St. Paul & Biddle Medical Associates, P.A.) whose corporate charter was forfeited.  Compl. ¶ 61.  As noted, these provisions prohibit "any false, deceptive, or misleading representation," *see* 15 U.S.C. § 1692e, and "unfair and unconscionable" collection practices.  *See id.* § 1692f.

As discussed, F&W did not maintain a lawsuit on behalf of a non-existent corporate entity.  Rather, it maintained suit under a trade name, "St. Paul & Biddle Medical Associates." Moreover, as I have explained, the difference between the trade name and the name used in the text of the Assignment was not material under the FDCPA, in that it would not have deceived the least sophisticated debtor.  *See, e.g.*, *Gutierrez*, *supra*, 382 F.3d at 739-40.  Therefore, plaintiff failed to state an actionable violation of the FDCPA on this basis.

### ii.   *Suing on a time-barred debt*

Because suit was filed in State court more than three years after plaintiff last received medical services, plaintiff alleges that F&W violated the FDCPA by using the State court in an

---

[17] Because I concluded that Pacific Rehab is not a debt collector, I did not address these five contentions as to Pacific Rehab.  Nevertheless, my analysis of F&W's liability would apply equally to Pacific Rehab.

attempt to collect on a time-barred debt.  *See* Compl. ¶ 62.[18]  She relies on the statute of limitations that generally governs civil actions in Maryland, requiring suit within three years from the date the cause of action accrues.  *See* Md. Code (2009 Repl. Vol., 2010 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J.").[19]

F&W observes that it pursued suit on behalf of Pacific Rehab in a Maryland court, under Maryland law, for breach of contract.  In this regard, it points out that both the Agreement and the Assignment were contracts under seal, subject to a twelve-year statute of limitations under Maryland law, pursuant to C.J. § 5-102(a)(5).[20]

In analyzing whether the Pacific Rehab Complaint was time barred when it was filed, I look to Maryland's statute of limitations.  In Maryland, a statute of limitations is considered a "procedural" rule "for choice-of-law purposes."  *Lewis v. Waletzky*, 422 Md. 427, 664, 31 A.3d 123, 133 (2011).  "Procedural matters . . . are always governed by the law of the forum," *i.e.*, Maryland.  *Id.* at 657-58, 31 A.3d at 129-30; *accord Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 632-33, 925 A.2d 636, 656 (2007).

C.J. § 5-102(a) provides (emphasis added):

---

[18] As noted, suit was filed by Kodeck, not F&W.  Nevertheless, Kodeck is not named in Count I.

[19] I have cited to the volume in effect in 2010, when the Pacific Rehab Complaint was filed.  Nevertheless, there has been no change in the limitations periods since 2005, when the agreements were signed.

[20] The Assignment and the Agreement were executed in Maryland.  Ordinarily, "interpretation of private contracts is … a question of state law."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).  "In a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits . . . ."  *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) (citing *In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988)).  Maryland follows the *lex loci contractus* rule, under which "the law of the jurisdiction where the contract was made controls its validity and construction."  *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988); *accord Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490-92, 790 A.2d 720, 728–29 (2002).

(a) An action on *one of the following specialties* shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

    (1) Promissory note or other instrument under seal;

    (2) Bond except a public officer's bond;

    (3) Judgment;

    (4) Recognizance;

    (5) *Contract under seal*; or

    (6) Any other specialty.

In *General Petroleum Corp. v. Seaboard Terminals Corp.*, 19 F. Supp. 882, 883-84 (D. Md. 1937), Judge Chestnut explained that a specialty "is a well-known term of the common law which in Maryland and elsewhere by judicial decision denotes a legal instrument under seal." *See also The Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba*, 180 Md. App. 576, 601-02, 952 A.2d 328, 342 (2008); *Allied Funding v. Huemmer*, 96 Md. App. 759, 766, 626 A.2d 1055 (D. Md. 1993); *Attorney General of Maryland v. Dickson*, 717 F. Supp. 1090, 1104 (D. Md. 1989), *appeal dismissed*, 914 F.2d 247 (4th Cir. 1990). Indeed, Black's Law Dictionary (9th ed. 2009) does not offer a separate definition for "specialty," but treats it as synonymous with "contract under seal." *See id.* at 1527 ("specialty. 1. See *contract under seal* . . . .").

No consideration is required to enforce a contract under seal. *See Twining v. Nat'l Mortg. Corp.*, 268 Md. 549, 554, 302 A.2d 604, 606 (1973); *Cnty. Comm'rs for Carroll Cnty. v. Forty West Builders, Inc.*, 178 Md. App. 328, 384-85, 941 A.2d 1181, 1213-14 (2008); *Venners v. Goldberg*, 133 Md. App. 428, 435-36, 758 A.2d 567, 570-71 (2000); *see also* Black's Law Dictionary 368 (defining "contract under seal" as "[a] formal contract that requires no consideration and has the seal of the signer attached"). In *Twining*, 268 Md. at 554, 302 A.2d at

606, the Maryland Court of Appeals said: "'The common law has never required a consideration in contracts under seal, but has enforced them because they were held to be the deliberate engagements of the parties making them.'"   (Citation omitted).   In other words, "[a]t common law, a contract signed under seal was a formal obligation that became operative and enforceable upon delivery.  (Hence the expression 'signed, sealed, and delivered.')."  *Venners*, 133 Md. App. at 435, 758 A.2d at 570.

In determining whether C.J. § 5-102 applies to a suit based on a contract claim, such as the one filed by F&W, a two-step inquiry is required:  (1) Is the contract a specialty? (2) Is the cause of action "on" the specialty?

Under Maryland's objective theory of contract interpretation, "[t]he court's duty is to determine the intention of the parties as reflected in the terms of the contract." *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003).  "[T]o determine whether [a contract] was executed under seal . . . [t]he court may first look to the body of the contract itself" to glean the parties' intent.  *Rouse-Teachers Props., Inc. v. Maryland Cas. Co.*, 358 Md. 575, 588, 750 A.2d 1281, 1287 (2000) (citations omitted).  "When a contract's language is expressed in clear and unambiguous terms, the court will not engage in construction, but will look solely to what was written as conclusive of the parties' intent." *Middlebrook Tech, LLC v. Moore*, 376 Md. App. 40, 66, 849 A.2d 63, 79 (citing *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298 (1996)).

In interpreting a contract, a court may consider parol evidence only if the contract is ambiguous.  *See Sy-Lene*, 376 Md. at 167-68, 829 A.2d at 546-47; *Rouse-Teachers*, 358 Md. at 588, 750 A.2d at 1287.  However, a contract is not ambiguous merely because the parties do not agree on its meaning.  *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996).

Rather, a contract is ambiguous "if it is subject to more than one interpretation when read by a reasonably prudent person." *Sy-Lene*, 376 Md. at 167, 829 A.2d at 547. Whether a contract is ambiguous, and the interpretation of any unambiguous language, is a question of law for the court. *Id.* at 163, 829 A.2d at 544.

Pursuant to clearly established Maryland law, "the inclusion of the word 'seal' in a pre-printed form executed by an individual is sufficient to make the instrument one under seal," absent "evidence manifesting a contrary intention." *Warfield v. Balt. Gas & Elec. Co.*, 307 Md. 142, 143-45, 512 A.2d 1044, 1044-47 (1986); *see Pac. Mortg. & Inv. Grp., Ltd. v. Horn*, 100 Md. App. 311, 322, 641 A.2d 913, 918 (1994) (holding that twelve-year statute of limitations for specialties applied to mortgage note in which the word "seal" was placed on a pre-printed form signed by the parties); *see also General Petroleum Corp.*, 23 F. Supp. at 140 (stating that, under Maryland law, "[i]f the contract is signed by an individual opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper"). In *Warfield*, for example, the parties executed a guaranty, on which "(SEAL)" was pre-printed at the end of an individual's signature line. 307 Md. at 143, 512 A.2d at 1044. Although the guaranty did not recite that it was under seal, the court held that the inclusion of the word "(SEAL)" was sufficient to make the guaranty a contract under seal, subject to the extended statute of limitations in C.J. § 502(a).

*Federal Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003, 1007 (4th Cir. 1936), is also instructive. There, the Fourth Circuit stated:

> Whether a mark or character shall be held to be a seal depends upon the intention of the executant, 'as shown by the paper.' And, as the word 'seal' in parenthesis is in common use as a seal, its presence upon an instrument in the usual place of a seal, opposite the signature, undoubtedly evinces an intention to

make the instrument a sealed instrument, which should be held conclusive by the court, in the absence of other indications to the contrary appearing on the face of the instrument itself.

In this case, both the Assignment and the Agreement include the word "SEAL" next to plaintiff's signature.  Nevertheless, plaintiff argues that Pacific Rehab did not intend for the contracts to be under seal because elsewhere the contracts include "contrary" provisions indicating that "no limitations period would apply."  *See* Opp. at 25.  Because waivers of limitations are void in Maryland, as against public policy, Hart insists that "the only limitations period that can legally apply to the contracts is the default three-year statute of limitations" contained in C. J. § 5-101.  Opp. at 25.  *See Ahmad v. E. Pines Terrace Apartments, Inc.*, 200 Md. App. 362, 375-76, 28 A.3d 1, 8-9 (2011) (holding, as a matter of first impression in Maryland, that "any permanent waiver of the statute of limitations offends Maryland public policy and is unenforceable").

As to intent, plaintiff's argument is not persuasive.  Placing a contract under seal is not just a mechanism used to extend limitations, even though a contract under seal is subject to an extended limitations period.  As noted, a contract placed under seal insures that the contract is legally enforceable, even in the absence of consideration.  Therefore, the waiver and the seal are not mutually exclusive.  In any event, they indicate that the parties did not intend to subject the agreements to the standard three-year statute of limitations, and expressly extended limitations at least to twelve years, as permitted under Maryland law.

It is also noteworthy that the State plaintiff filed its collection suit on January 5, 2011, months before *Ahmed* was decided on September 1, 2011.  So, at the time suit was filed, no Maryland case precluded a contractual waiver of limitations.  Furthermore, *Ahmed* did not involve a contract under seal.  Therefore, *Ahmed* does not stand for the proposition that the

invalidity of a clause waiving limitations also renders invalid the seal portion of the contract. Nor has plaintiff provided any authority for the proposition that a ruling in September 2011, rendering invalid a clause that waived limitations, had the effect of retroactively nullifying the seal and its corresponding period of limitations.

Under Maryland law, an invalid provision does not affect the validity of a contract where it is not so logically interwoven as to preclude enforcement of the contract's terms. *See Hughes v. Schaefer*, 294 Md. 653, 663 A.2d 428, 452 (1982) (holding that invalidity of certain clauses did not void trust agreements in their entirety because "the parties to the trust agreements [could] carry out the other provisions . . . even if the restricting clauses are unenforceable"); *Hebb v. Stump, Harvey & Cook*, 25 Md. App. 478, 334 A.2d 563 (1975) (holding that overbroad restrictions were severable from otherwise valid noncompetition agreement); *Connolley v. Harrison*, 23 Md. App. 485, 327 A.2d 787 (1974) (holding that invalid restraint on alienation could be severed from contract without destroying validity); *Baldwin v. Grymes*, 232 Md. 470, 194 A.2d 285 (1963) (holding that illegal provision in nursing home contract did not affect the validity of contract, when the provision was not so interwoven into the terms of the contract); *see also Nicholson v. Ellis*, 110 Md. 322, 332, 73 A. 17, 19 (1909) (mortgage securing purchase price in sale of a business is not invalidated by seller's covenant not to compete, even if the covenant is illegal). Here, the waiver of limitations was not intertwined with Hart's contractual obligation to pay. Therefore, I conclude that the waiver of limitations clause did not nullify the "SEAL" portion of the documents.[21]

---

[21] In view of the use of "SEAL" next to Hart's signature on both documents, Pacific Rehab certainly had a sound basis to conclude that the Agreement and the Assignment qualified as contracts under seal, subject to C.J. § 5-102(a), when it filed suit in State court. To the extent that a court were to disagree with the State plaintiff's construction of and reliance on the "Seal," it seems likely that the State plaintiff would be able to avail itself of the bona fide error defense in 15 U.S.C. § 1692k(c). That issue is not before me, however.

Moreover, Pacific Rehab's claim was "on" a specialty, because it was "grounded on some type of obligation set forth in the instrument." *Mattingly v. Hopkins*, 254 Md. 88, 98, 253 A.2d 904, 910 (1969) (holding that plaintiff's negligence claim against engineering firm concerning subdivision of real property was subject to three-year statute of limitations, and was not a claim on a specialty merely because plaintiff had recorded plat of subdivisions under seal with the county clerk).  Specifically, Pacific Rehab alleged that Hart breached the agreement to pay for services rendered.

In sum, it does not appear that F&W sued on a time-barred debt under Maryland law. Rather, it had a legitimate basis to believe that suit was based on a specialty subject to the twelve-year statute of limitations set forth in C.J. § 5-102(a)(5).  Thus, plaintiff has failed to state an actionable violation of the FDCPA on this basis.

### iii. *Misrepresentation of amount owed*

Plaintiff alleges that F&W violated the FDCPA by maintaining a suit that overstated the amount of her debt.  Compl. ¶ 63.

The court documents in the State collection case, which are subject to judicial notice, establish that F&W entered its appearance as counsel for Pacific Rehab *after* suit was filed by Kodeck, who withdrew as counsel.  Even assuming the suit contained a misrepresentation as to the amount owed, F&W did not make the misrepresentation.

According to F&W, it cannot be held liable merely for entering an appearance in a case in which prior counsel made an allegedly unlawful representation.  Plaintiff has not responded to F&W's Motion with respect to this claim.  In fact, it appears that she now asserts only four violations of the FDCPA.  *See* Opp. at 20 ("Plaintiff's Amended Class Action Complaint sets forth *four* plausible violations of the FDCPA.") (Emphasis added).  This particular claim is not

among the violations discussed by plaintiff in her Opposition as one of the four "plausible violations of the FDCPA." Therefore, I conclude that this contention has been abandoned. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim.").

       *iv. Prejudgment interest*

Plaintiff complains that F&W sought prejudgment interest that improperly accrued from the date she began treatment, rather than from the particular date that each service was rendered. *See* Compl. ¶ 64; Opp. at 31-32.[22]  Plaintiff does not assert that Pacific Rehab had no right to pursue prejudgment interest, or that Pacific Rehab charged simple interest at a rate in excess of the six percent allowed under Maryland law. *See* C.L. § 12-102.  Instead, she alleges that F&W, on Pacific Rehab's behalf, requested prejudgment interest on principal when it was not yet due and owing.  According to plaintiff, this constituted an attempt to collect an amount that was not expressly authorized by agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1).

Both the Assignment and the Agreement provide for "legal interest."  They state: "I . . . agree to pay legal interest and attorney fees accrued in pursuit of collection of monies for services rendered."[23]  To be sure, the contracts were hardly well worded, and the right to prejudgment interest is vague.  However, this language certainly justified the creditor's *request*, although Pacific Rehab might not have prevailed.

---

[22] As noted, the parties have not specified the amount of interest sought in the amended prejudgment interest worksheet.

[23] As indicated, the Pacific Rehab Complaint also sought attorney's fees of fifteen percent of the judgment.  Plaintiff does not allege that the request for attorney's fees violated the FDCPA or Maryland law.

In *Buxton v. Buxton*, 363 Md. 73, 923 A.2d 1 (2007), Judge Wilner, writing for the Maryland Court of Appeals, explained the "three basic rules" governing the award of prejudgment interest in Maryland, which determine when interest is allowable as a matter of right; when it is not allowed; and when its allowance is within the discretion of the trier of fact, *id.* at 656-57, 770 A.2d at 165 (emphasis added):

> Pre-judgment interest is *allowable as a matter of right* when "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *First Virginia Bank v. Settles*, 322 Md. 555, 564, 588 A.2d 803, 807 (1991); *State Highway Admin. v. Kim*, 353 Md. 313, 326, 726 A.2d 238, 245 (1999); *United Cable v. Burch*, 354 Md. 658, 668, 732 A.2d 887, 892 (1999).  As we explained in *I.W. Berman Prop. v. Porter Bros.* [ ], 276 Md. [1,] 16-17, 344 A.2d [65,] 75 [(1975)], the right to pre-judgment interest as of course arises under written contracts to pay money on a day certain, such as bills of exchange or promissory notes, in actions on bonds or under contracts providing for the payment of interest, in cases where the money claimed has actually been used by the other party, and in sums payable under leases as rent. Pre-judgment interest has been held a matter of right as well in conversion cases where the value of the chattel converted is readily ascertainable.  *See Robert C. Herd & Co. v. Krawill Machinery Corp.*, 256 F.2d 946 (4th Cir. 1958), *aff'd*, 359 U.S. 297 (1959).
>
> On the other hand, in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement, the award itself is presumed to be comprehensive, and *pre-judgment interest is not allowed*.  *In Taylor v. Wahby*, 271 Md. 101, 113, 314 A.2d 100, 106 (1974), we held that, in a tort action in which the claim is unliquidated and not reasonably ascertainable until the verdict, interest runs from the time of verdict.  Between these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of *pre-judgment interest is within the discretion of the trier of fact*.  *See Crystal v. West & Callahan*, 328 Md. 318, 343, 614 A.2d 560, 573 (1992); *I.W. Berman Prop. v. Porter Bros.*, . . . 276 Md. 1, 344 A.2d 65.

*See also Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 770-71, 923 A.2d 971, 1022 (2007).

Here, Pacific Rehab was not asserting a claim in tort.  Although Pacific Rehab sued on a breach of contract theory, it was not entitled to prejudgment interest as a matter of right, because

the contractual language did not provide for payment on a date certain.  Instead, an award of prejudgment interest would have been within the discretion of the trier of fact.  *See Buxton*, 363 Md. at 656-57, 770 A.2d at 165 (noting that the case falls "[b]etween these poles of allowance as of right and absolute non-allowance"); *see also Knowles v. Mut. Life Ins. Co. of New York*, 788 F.2d 1038, 1041 (4th Cir. 1986) (Maryland "gives a trial judge the discretionary right to award prejudgment interest to place the injured party in a breach of contract case in the same position she would have occupied had the defendant not broken its promise.").

In *McLean v. Ray*, 488 F. App'x 677 (4th Cir. 2012), the Fourth Circuit determined under Virginia law that the plaintiff in a debt collection lawsuit did not violate the FDCPA by demanding prejudgment interest on amounts that were not yet due.  It noted that "Virginia law permits plaintiffs to seek prejudgment interest, which is awarded at the discretion of the trier of fact."  *Id.* at 684.  Therefore, it reasoned, *id.*:

> [A]ny risk that [the plaintiff] would have been able to recover damages to which it was not entitled—i.e., prejudgment interest on amounts that were not yet due and payable—is mitigated by the fact that a decision to award such interest in the first instance is determined at the discretion of a presumably competent and reasonable trier of fact.

Here, it would have been for the trier of fact in the State court to determine whether the contracts provided for prejudgment interest, and whether the amount requested by Pacific Rehab comported with Maryland law and the facts.  To be sure, Hart was entitled to dispute both the request and the amounts sought.  It would have been up to the trier of fact to resolve whether Pacific Rehab overstated or miscalculated its request for prejudgment interest.

By analogy, Judge Messitte's reasoning in *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635 (D. Md. 2010), is instructive.  In that case, attorneys litigating to collect a debt for a creditor sought attorneys' fees of fifteen percent of the judgment, in accordance with a contract

providing for "reasonable attorneys [sic] fees." *See id.* at 648.  They included their request in the "*ad damnum* clause" of a motion for summary judgment, which stated: "WHEREFORE, your Plaintiff [Discover Bank] Prays, that summary judgment be entered in its favor in the sum of $13,983.05 plus court costs, plus 15% attorneys [sic] fees."  *Id.* (alteration in original).  They also attached an affidavit in support.  *Id.*  The debtor sued under the FDCPA, asserting, *inter alia*, that the request was an attempt to collect an amount not expressly authorized by the credit agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1).  *See* 733 F. Supp. 2d at 648.

Judge Messitte concluded that the request for attorney's fees "was just that—a request directed to the court, not a communication directed to the debtor, and certainly not a misrepresentation."  *Id.*  He explained:

> "A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself.  A request for attorney's fees ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation.  The whole purpose of regulating debt collection was to 'supervise' a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel.  The two situations are drastically different."

*Id.* (quoting *Argentieri v. Fisher Landscapes, Inc.*, 15 F. Supp. 2d 55, 61-62 (D. Mass. 1998)); *accord Bull v. Asset Acceptance, LLC*, 44 F. Supp. 2d 946, 951 (N.D. Ind. 2006) ("The Defendants have not violated the FDCPA by inserting an amount of attorneys' fees in the Collection Complaint after [plaintiff] agreed to pay reasonable attorneys' fees in the event of default.  If Plaintiff questions the reasonableness of the fees, . . . it has various ways to challenge them.").

Here, the State suit included a request for prejudgment interest in the prayer for relief.  *See* Pacific Rehab Compl. at 8.  In my view, Judge Messitte's analysis applies with equal force to

a prayer for prejudgment interest.  *See, e.g.*, *Bird v. Pressler & Pressler, L.L.P.*, No. 12-CV-3007(JS)(ETB), 2013 WL 2316601, at *2 (E.D.N.Y. May 28, 2013) (finding that plaintiff failed to state a claim under FDCPA based on debtor's request for prejudgment interest because "the prayer for relief of pre-judgment interest is a request upon the Court" and "not a representation of a sum certain").  In other words, like the request for attorney's fees directed to the court in *Sayyed*, the State plaintiff, through counsel, made a request to the court, for its consideration and determination.  *See Sayyed*, 733 F. Supp. 2d at 648.  It was not an actionable representation to the debtor under the FDCPA.  *See id.*

The cases cited by plaintiff suggesting liability based on unlawful interest are factually inapposite.  They do not involve a prayer for relief in a complaint, directed to the court, but rather, communications directed to the debtor.  *See, e.g.*, *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1027-28 (N.D. Ill. 2009) (finding FDCPA violation predicated on debt collector's *letter* to debtor demanding interest not authorized by contract or law).

Accordingly, plaintiff failed to state a claim under the FDCPA on this basis.

v.  *Unlicensed "Collection Agency"*

Plaintiff claims that F&W violated §§ 1692e(5) and 1692f(1) of the FDCPA, Compl. ¶ 66, by failing to obtain and maintain a valid Maryland collection agency license.

The Maryland Collection Agency Licensing Act requires that "a person [] have a license whenever the person does business as a collection agency in the State."  B.R. § 7-301(a). "Collection agency" includes, in relevant part, "a person who engages directly or indirectly in the business of . . . collecting for, or soliciting from another, a consumer claim."  *Id.* § 7-101(c)(1)(i). In turn, "consumer claim" is defined as "a claim that: (1) is for money owed or said to be owed by a resident of the State; and (2) arises from a transaction in which, for a family, household, or

personal purpose, the resident sought or got credit, money, personal property, real property, or services." *Id.* § 7-101(e).

Violations of a state licensing law such as the MCALA may support a claim under the FDCPA. *See, e.g.*, *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 726-27 (D. Md. 2011) (holding that a violation of the MCALA may support a cause of action under the FDCPA, including when an unlicensed debt purchaser files lawsuits to collect on debt in default, as a threat to take an action that cannot legally be taken); *Hauk v. LVNV Funding, LLC*, *supra*, 749 F. Supp. 2d at 366-67 (indicating that a debt collector's failure to register under state collection law is pertinent to whether it used unfair or unconscionable means to collect a debt). However, the MCALA does not apply to "a lawyer who is collecting a debt for a client, unless the lawyer has an employee who: (i) is not a lawyer; and (ii) is engaged primarily to solicit debts for collection or primarily makes contact with the debtor to collect or adjust the debt through a procedure identified with the operation of a Collection Agency." B.R. § 7-102(9).

Plaintiff has not alleged any facts to suggest that F&W falls within this exception. Therefore, F&W is not a "collection agency" under the MCALA, and plaintiff failed to state an actionable violation of the FDCPA on this basis.

*             *             *

In view of the foregoing, I find that plaintiff failed to state a claim under the FDCPA. In her Opposition, Hart has not asked for leave to amend her Complaint, which was already amended once in response to defendants' previous motions to dismiss, and I have no reason to believe that further amendment would cure the defects in her Complaint. Therefore, I will dismiss plaintiff's FDCPA claims, with prejudice.

II.     *State Law Claims*

As indicated, the Complaint contains one count based on federal law and two counts based on Maryland law.  This Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331(a)(1), which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'"  *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012).  The "Supreme Court has interpreted § 1331 to require supplemental jurisdiction . . . over certain claims . . . that do not themselves give rise to federal jurisdiction."  *Id.*

Section 1367(a) of Title 28 of the United States Code governs supplemental jurisdiction over plaintiff's state law claims.  It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In *ESAB*, the Fourth Circuit described the Supreme Court's traditional approach to supplemental (or "pendent") jurisdiction, *id.* (internal citations omitted):

> [S]o long as one claim in an action presented a federal question on the face of the well-pleaded complaint, a court could exercise jurisdiction over the entire constitutional case or controversy.  It does not follow, however, that the federal court had original jurisdiction over the entire case; rather, it had original jurisdiction over at least one claim, allowing the exercise of supplemental/pendent jurisdiction over the remaining claims.  And the Supreme Court subsequently recognized that, when the exercise of pendent jurisdiction over these claims became "inappropriate," district courts had inherent authority to remand them to state courts.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or

not to retain jurisdiction over state claims when federal claims have been extinguished."  *Id.* at 110; *see also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction.").  Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of concerns and values.'"  *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106).

The Fourth Circuit has held that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met."  *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001); *see e.g.*, *Ramsay*, *supra*, 2013 WL 2405309, at *3 (declining to exercise supplemental jurisdiction over plaintiff's MCDCA and MCPA claims after dismissing FDCPA claims); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) (Chasanow, J.) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

I have granted defendants' motion to dismiss as to plaintiffs' federal claims in Count I, with prejudice.  In the absence of federal question jurisdiction, I exercise my discretion by declining to retain supplemental jurisdiction over the remaining State law claims, as they implicate legal issues appropriate for a State court to decide.  Therefore, the State law claims are dismissed, without prejudice to plaintiff's right to pursue them in a State court.

Case 1:12-cv-02608-ELH   Document 43   Filed 09/13/13   Page 46 of 46

**Conclusion**

For the foregoing reasons, plaintiff's Amended Class Action Complaint (ECF 14) is dismissed. An Order follows.


Date: September 13, 2013                             _____/s/_____

Ellen Lipton Hollander
United States District Judge